**Hobert Ernest ROBERTS (alias Ernie Howard), Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Oct. 12, 1983.

Joseph K. Beasley, Harlan, for appellant.

Steven L. Beshear, Atty. Gen., Sarah M. Jackson, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Justice.

Hobert Ernest Roberts appeals as a matter of right from a judgment of the Harlan Circuit Court finding him guilty of first degree manslaughter and sentencing him to twenty years in prison.

Clarence Jestes was shot twice and killed near his cabin atop a mountain in Harlan County in the early hours of April 19, 1981. With Jestes' permission, a pig roast was held on his property the night before with forty to fifty people in attendance. Witnesses had seen Jestes quarrel and fight with Ronnie Middleton at one point in the evening. Later, after the party had ended, Jestes was involved in another altercation when he pulled a gun on one of the people cleaning up. Billy Morgan, Jestes' son, jumped and disarmed his father before Bob Richards and Tony Noble broke up the

fight. Madaris Adams carried away Jestes' gun and Billy Morgan left the mountain.

As those remaining prepared to leave several shots were fired in rapid succession. Bob Richards gave two statements to the police. In the first statement he did not mention that he had seen or was able to identify the person who fired the shots. In the second statement and in his testimony at trial he distinctly remembered seeing appellant step from the left front side of the cabin firing a gun. None of the other witnesses saw Jestes get shot, and all, at that time, assumed it was Jestes who was shooting and ran away.

Richards and several others went back to the cabin after the shooting to return Jestes' gun because Jestes had threatened after the second scuffle to kill Richards if it was not returned. Richards said he tossed the gun beside Jestes' prone body, and assumed he had passed out from drinking.

Richards left the mountain again. By this time word had spread that there had been some shooting, and John S. Howard, who lived nearby, drove with Richards and two others to Jestes' cabin to have a word with him. Only then was it discovered that Jestes had been shot.

Appellant testified that at the time of the shooting he was repairing his brother's broken-down car. This brother corroborated the alibi, but Sherry Frazier, who was with appellant's brother when the car broke down, testified that appellant's alibi was a lie.

Richards, the only witness who testified at trial as seeing appellant at the time of the shooting, gave his first statement to police while being monitored by a polygraph. In that statement Richards remembered hearing gunshots but presumed it was Jestes shooting. No mention was made of appellant ever being there, much less firing a gun. When confronted with the polygraph results, Richards broke out in a "cold sweat," his teeth chattered, and he became nervous and excited. Richards then gave a second statement which did mention appellant firing a gun.

The trial judge, after hearing arguments of counsel on the admissibility of testimony about the polygraph test before the testimony was given, ruled that this testimony was admissible to show why Richards suddenly regained his memory, but that the actual test results could not be introduced.

Appellant asserts that under *Conley v. Commonwealth*, Ky., 382 S.W.2d 865 (1964) and its progeny, any reference to a polygraph exam is error. The Commonwealth maintains that there is error only when the results of a polygraph test are introduced. The Commonwealth's reading of the case law is incorrect. This court has held not only are the results inadmissible, but any reference to an offer or refusal to take a polygraph test is inadmissible as well. *Penn v. Commonwealth*, Ky., 417 S.W.2d 258 (1967).

The danger with informing a jury about polygraph results is that the results are not scientifically trustworthy. In this case the witness added to and materially changed his story immediately after he was confronted with the results of the polygraph test and, according to the witness Dr. Maggard, while he was scared of his examiners who were threatening him with the possibility of being charged as an accessory if he didn't tell the truth. A reasonable juror could scarcely escape the inference that he had failed the polygraph test which monitored his first statement even though the test result was not offered in evidence.

The evidence against appellant was not overwhelming. Richards was the only witness who purported to have seen the shooting and his testimony was clouded by the prior statement which indicated he did not see the shooting or even know that the deceased had been shot. The jurors had the right to believe either version of Richards' recollections, or both of them if they believed the omissions in his first statement were simply the result of amnesia. The jury should not be permitted to conclude,

however, that his second statement and his trial testimony were probably true because a lie detector test had shown the first statement to be false.

The Commonwealth contends that polygraph test results are only inadmissible as to one charged with a crime but are not inadmissible as to witnesses. This contention is refuted by *Ice v. Commonwealth*, Ky., (decided Sept. 21, 1983).

The Commonwealth also attempts to justify the references to the polygraph examination, the results of which were made known to the witness Richards, on the basis of expert testimony that Richards probably suffered an episode of amnesia which he overcame when informed of the results of the test. This attempted justification does nothing to overcome the prejudicial effect of the introduction of the evidence, and the judgment must be reversed.

Because of the likelihood of another trial, we will comment briefly upon two other alleged errors. (1) The testimony of Richards alone was sufficient to take the case to the jury, and appellant was not entitled to a directed verdict. (2) The record does not show any irregularity concerning the in-court demonstration of an experiment by a state detective. The experiment did not incriminate appellant in any way, and we cannot say it was erroneously allowed in evidence on the state of this record.

The Judgment is reversed for further proceedings.

All concur.