James Ray JOHNSON Appellant

v.

COMMONWEALTH of Kentucky Appellee

No. 2001–SC–0883–MR.

Supreme Court of Kentucky.

May 22, 2003.

---

9. *See e.g., Smith v. Commonwealth*, Ky., 904 S.W.2d 220, 222 (1995).

Emily Holt, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler, III, Attorney General, Dennis W. Shepherd, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

Opinion of the Court by Justice
COOPER.

Following his convictions by an Ohio Circuit Court jury of possession of marijuana, possession of drug paraphernalia, and possession of a controlled substance (methamphetamine), all committed while in possession of a firearm, Appellant was sentenced to a total of twenty years imprisonment. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), contending that the trial court erred by (1) failing to instruct the jury on the "beyond a reasonable doubt" standard with respect to the firearm enhancement issue; (2) failing to dismiss the enhancement issue because of insufficiency of the evidence to prove his possession of a firearm; (3) allowing the Commonwealth to play a videotape of the execution of the search warrant and his arrest; (4) failing to sufficiently cure the Commonwealth's reference to his prior guilty plea in another case; (5) failing to properly instruct the jury on the drug paraphernalia charge; and (6) allowing the Commonwealth to amend the indictment with respect to the charge of trafficking in methamphetamine. For the reasons hereinafter explained, we affirm.

On July 18, 2000, the Ohio County Sheriff's Department executed a search warrant at Appellant's residence in Hartford, Kentucky. The search and Appellant's arrest were videotaped as the events occurred. When the officers arrived, Appellant was in his living room sitting on a stool. After serving the warrant, the officers escorted Appellant outside so that he could tie down his aggressive dog. Appellant was then handcuffed and searched. On his person, the officers found a hypodermic needle and a piece of paper detailing the radio frequencies of the Drug Enforcement Agency, the Ohio County Police Department, and other various frequencies labeled "bugs."

Under a chair in the living room, police found marijuana roaches and a loaded .22 caliber Derringer pistol. A leather holster fitting the pistol was located in Appellant's bedroom. A spoon layered with methamphetamine residue was found behind a stereo in one of the bedrooms. A plastic bag containing white "cutting" powder was discovered in a sewing machine drawer in a bedroom. Some "M93" white diet pills commonly used for "cutting" methamphetamine were found in a bedroom dresser drawer and in the bathroom. Several

small plastic sandwich bags with the corners missing were located in the kitchen and garage. (Testimony at trial suggested that drug dealers often sell drugs in the cut-off corners of such bags.) Two surveillance cameras were found in the residence, one in the living room and another in the bedroom, both directed toward the street in front of the house.

Appellant was indicted on charges of possessing drug paraphernalia, possessing marijuana for the purpose of sale, possessing methamphetamine for the purpose of sale, possession of a handgun by a convicted felon, and trafficking in marijuana within 1000 yards of a school, all while in possession of a firearm. He was ultimately convicted of possession of drug paraphernalia and possession of marijuana, both Class A misdemeanors, and possession of a controlled substance in the first degree (methamphetamine), a Class D felony. All three convictions were enhanced to higher classifications by the jury's additional finding that Appellant was in possession of a firearm when the offenses were committed, KRS 218A.992(1), and Appellant was sentenced to the maximum penalty for each conviction. The sentences were ordered to run consecutively for a total of twenty years.

## I. FIREARM POSSESSION INSTRUCTION.

■ Appellant contends that the trial court's instruction on the firearm enhancement issue violated his right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 11 of the Kentucky Constitution, to be found guilty by a jury of every element of the crime with which he was charged "beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 477, 120 S.Ct. 2348, 2356, 147 L.Ed.2d 435 (2000); *United States v. Gaudin,* 515 U.S. 506, 510, 115

S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995); *Newby v. Commonwealth,* 255 Ky. 597, 75 S.W.2d 25, 29 (1934). *Apprendi, supra,* established in a landmark decision that this requirement applies to every fact, with the exception of a prior conviction, that increases the penalty for a crime beyond the statutory maximum. 530 U.S. at 490, 120 S.Ct. at 2362–63.

The so-called "firearm enhancement statute" KRS 218A.992(1), works such an increase in the statutory maximum:

> Other provisions of the law notwithstanding, any person who is convicted of any violation of this chapter who was at the time of the commission of the offense in possession of a firearm, shall:
>
> (a) Be penalized one (1) class more severely than provided in the penalty provision pertaining to that offense if it is a felony; or
>
> (b) Be penalized as a Class D felon if the offense would otherwise be a misdemeanor.

Thus, Appellant's convictions of possession of marijuana in violation of KRS 218A.1422 and possession of drug paraphernalia in violation of KRS 218A.500(2), both Class A misdemeanors otherwise subject to an aggregate maximum penalty of twelve months incarceration, KRS 532.090(1), KRS 532.110(1)(b), were, pursuant to KRS 218A.992(1)(b), increased to Class D felonies and he was sentenced to the maximum of five years imprisonment for each offense. KRS 532.060(2)(d). Appellant's conviction of possession of a controlled substance in the first degree, a Class D felony otherwise punishable by a maximum of five years imprisonment, *id.*, was enhanced to a Class C felony for which he was sentenced to the maximum of ten years imprisonment. KRS 532.060(2)(c). The sentences were ordered to run consecutively for a total of twenty years imprisonment. Since misdemeanor convictions

must run concurrently with felony convictions, KRS 532.110(1)(a), absent the application of KRS 218A.992(1), Appellant's maximum aggregate sentence could have been only five years. Because KRS 218A.992(1) effected an increase in his sentence to twenty years, *Apprendi* required that the firearm charge be proven to the jury beyond a reasonable doubt.

The separate instructions on each of the controlled substance and paraphernalia possession charges correctly authorized the jury to find Appellant guilty only if it "believe[d] from the evidence, beyond a reasonable doubt" that Appellant committed the charged offense. However, the separate instruction on possession of a firearm contained no such provision. It only instructed the jury that:

> You, the jury, will determine whether or not the Defendant was in possession of a handgun on July 18, 2000.

Appellant asserts that this instruction was inadequate to secure his constitutional right to be found guilty beyond a reasonable doubt. We agree. *Apprendi, supra*, required that the jury be instructed to find the facts necessary to apply KRS 218A.992(1) beyond a reasonable doubt just as they were instructed to find the existence of the elements necessary to prove the underlying offenses. *Compare* 1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 9.34D, at 629 (4th ed. Anderson 1993) ("If you find the Defendant guilty under this Instruction, you will so state in your verdict and further state whether you believe from the evidence *beyond a reasonable doubt* that the Defendant was in possession of a firearm when he committed the offense.") (emphasis added).

■ The instruction also failed to allude to the "nexus" requirement. In *Commonwealth v. Montaque*, Ky., 23 S.W.3d 629 (2000), we held that KRS 218A.992(1) "re-quires a nexus between the crime committed and the possession of a firearm." *Id.* at 632. "Mere contemporaneous possession of a firearm is not sufficient to satisfy the nexus requirement." *Id.* Here, however, the instruction simply required the jury to find that Appellant had possessed a handgun "on July 18, 2000." Thus, the jury could have found Appellant guilty on this open-ended count if it believed, *e.g.*, that he had possessed a handgun at a target shooting range on the morning of his arrest. A proper instruction would have required the jury to find beyond a reasonable doubt the existence of some nexus between Appellant's possession of the pistol and each of the individual drug and paraphernalia possession charges; *i.e.*, that Appellant possessed the firearm "in furtherance of" the underlying offenses. *Compare* Cooper, *supra*, at 629 (requiring the jury to also find beyond a reasonable doubt that the firearm was possessed by the defendant "when he committed the offense").

■ These deficiencies presumably would have been corrected had they been brought to the trial judge's attention. However, they were not. Appellant neither objected to the firearm instruction nor proffered an alternative instruction to the trial court. RCr 9.54(2) provides:

> No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

*See also Barth v. Commonwealth*, Ky., 80 S.W.3d 390, 400 (2001); *Clifford v. Commonwealth*, Ky., 7 S.W.3d 371, 376 (1999);

*Davis v. Commonwealth,* Ky., 967 S.W.2d 574, 580–81 (1998). Thus, the issue is not preserved for appellate review.

But even analyzed on the basis of "palpable error," RCr 10.26, we find no "manifest injustice." Instruction No. 3 provided overall guidance on the issue of reasonable doubt.

> You shall find the Defendant not guilty unless you are satisfied from the evidence alone and beyond a reasonable doubt that he is guilty. If upon the whole case you have a reasonable doubt that he is guilty, you shall find him not guilty.

This instruction, while admittedly not specifically directed at the firearm possession issue, did inform the jury that the "reasonable doubt" standard applied to the "whole case." If the jury followed this instruction in its deliberations with respect to the whole case, then it did so with respect to the firearm possession issue. *Scobee v. Donahue,* 291 Ky. 374, 164 S.W.2d 947, 949 (1942) ("It is to be assumed that the jury ... followed the evidence and instructions in their entirety."); *United States v. Davis,* 306 F.3d 398, 416 (6th Cir.2002) ("Juries are presumed to follow the instructions they are given.").

## II. FIREARM POSSESSION: SUFFICIENCY OF THE EVIDENCE.

■ Appellant does not challenge the sufficiency of the evidence supporting his convictions of the underlying offenses of possession of marijuana, methamphetamine, or drug paraphernalia. "Constructive possession" is a well-established principle in the criminal law of Kentucky, and we have held in several cases that a defendant may be convicted of drug possession or possession of drug paraphernalia even though the illegal drugs or paraphernalia were not within the defendant's actual pos-

session. *E.g., Young v. Commonwealth,* Ky., 25 S.W.3d 66, 70 & n. 1 (2000). Appellant also does not argue that there was insufficient evidence that he possessed the firearm, itself. We held in *Houston v. Commonwealth,* Ky., 975 S.W.2d 925 (1998), that "a drug violation penalty may be enhanced under KRS 218A.992 if the violator has constructive possession of a firearm." *Id.* at 927; *see also Johnson v. Commonwealth,* Ky., 90 S.W.3d 39, 42 (2002); *Burnett v. Commonwealth,* Ky., 31 S.W.3d 878, 881 (2000). Appellant challenges only whether the evidence supported a finding that there was a "nexus," as required by KRS 218A.992 and *Montaque, supra,* between the pistol and his possession of the marijuana, methamphetamine, and drug paraphernalia.

*Montaque, supra,* is our guidepost for when the Commonwealth must prove a "nexus" pursuant to KRS 218A.992.

> *[W]henever it is established* that a defendant was in actual possession of a firearm when arrested, or *that a defendant had constructive possession of a firearm within his or her "immediate control" when arrested, then* ... *the Commonwealth should not have to prove any connection between the offense and the possession for the sentence enhancement to be applicable....* [W]hen it cannot be established that the defendant was in actual possession of a firearm or that a firearm was within his or her immediate control upon arrest, the Commonwealth must prove more than mere possession. It must prove some connection between the firearm possession and the crime.

23 S.W.3d at 632–33 (emphasis added) (citation omitted). Under *Montaque,* if the defendant had constructive possession of a firearm and the firearm was within his "immediate control" when he was arrested,

no further proof of a nexus need be shown.[1]

Appellant claims that the firearm was not within his "immediate control" when he was arrested because he was arrested outside the residence whereas the firearm was in the living room. Nevertheless, the undisputed evidence was that Appellant was found and his person was "seized" in his living room. Deputy Sheriff Gregory Clark testified that Appellant was in the living room when he arrived with the warrant. Clark escorted Appellant outside only because Clark was being attacked by Appellant's dog. Once Appellant had secured the dog, Clark searched Appellant and handcuffed him.

Appellant's daughter confirmed that Appellant was sitting on a stool in the living room when the officers arrived. Although another deputy, Norman Payton, testified that *he* first saw Appellant outside the house, Payton's testimony merely showed that he did not arrive until after Clark had escorted Appellant out of the house. *See Jordan v. Commonwealth,* Ky., 74 S.W.3d 263, 266 (2002) ("For the purpose of ruling on [a motion for a directed verdict], the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.").

Since the pistol was also found in the living room, Appellant was in the same room as the firearm at the time of his actual detention. The search video, which was shown to the jury as discussed *infra,* indicates that the living room was not so large as to render the firearm not readily available to Appellant. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) (construing the area within a defendant's "immediate control" as "the area from within which he might gain possession of a weapon or destructible evidence."). The gun was loaded and under a chair in the same room as Appellant. *Id.; cf. United States v. Mackey,* 265 F.3d 457, 462 (6th Cir.2001) ("In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use.").

Thus, the firearm was within Appellant's "immediate control" when he was arrested. *See Chimel, supra,* at 763, 89 S.Ct. at 2040 ("any room *other* than that in which an arrest occurs" would not necessarily be within the defendant's "immediate control" (emphasis added)); *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (entire interior of a vehicle and all containers therein were within defendant's "immediate control");

1. *Montaque* contemplates a case, like this one, in which the defendant was arrested while committing the KRS 218A offense. However, in some cases, a defendant may be arrested at some time after the drug offense has been committed, and under circumstances having nothing to do with the drug offense. For example, a defendant who sold drugs on a street corner in Louisville might be arrested for that crime just after purchasing and while still in possession of a hunting rifle in New York. Under a facial application of the test articulated in *Montaque,* the Commonwealth could convict that defendant under KRS 218A.992 without having to prove a "nexus" between the hunting rifle and the street cor-

ner drug deal. In that scenario, the correct test would be "while committing the drug offense," not "when arrested." In the instant case, however, there is no need for such a distinction because, as discussed *infra,* Appellant was committing the drug offenses when he was arrested.

We would further note that the *Montaque* holding does not affect the requirement that the jury instruction require the jury to find the existence of a nexus. It only recognizes that a finding that the defendant was in possession of a firearm when arrested under these circumstances is sufficient proof of the required nexus.

Collins v. Commonwealth, Ky., 574 S.W.2d 296, 298 (1978) (air conditioner which was "four to seven feet" from defendant's position in the motel room was within his "immediate control"); see also United States v. Williams, 104 F.3d 213, 215 (8th Cir.1997) (noting that there are "numerous" cases in which a "nexus" was found when "weapons and drugs were located in different rooms within a residence, but were found to be readily available during the drug transactions."). Accordingly, under Montaque, the Commonwealth was not required to introduce additional proof of a "nexus" between the firearm and the drugs and drug paraphernalia that defendant admits were within his constructive possession.

## III. VIDEOTAPE OF ARREST AND SEARCH.

Appellant next contends that the trial judge abused his discretion under KRE 403 by permitting the Commonwealth, over his objection, to play for the jury the videotape of the search and arrest. We agree that the videotape was unflattering to Appellant, who was shirtless and decidedly uncooperative with the officers. In part of the footage, Appellant can be seen accusing Officer Clark of "planting" the hypodermic needle in his pocket. It also showed Appellant being handcuffed and searched, and revealed the fact that his house was untidy. The trial court admitted the videotape because the Commonwealth contended that it rebutted Appellant's claim that Officer Clark had "planted" the hypodermic needle. To counter this purpose, Appellant offered to stipulate that the needle was found in his pocket if such a stipulation would keep the videotape from being shown. The Commonwealth declined to accept the stipulation and the videotape was shown.

■ We review a trial court's KRE 403 decision for abuse of discretion. Roark v. Commonwealth, Ky., 90 S.W.3d 24, 37 (2002); Love v. Commonwealth, Ky., 55 S.W.3d 816, 822 (2001); Walker v. Commonwealth, Ky., 52 S.W.3d 533, 538 (2001); Commonwealth v. English, Ky., 993 S.W.2d 941, 945 (1999). Appellant does not seriously contend that the videotape had no probative value. In fact, it proved the corpus delicti of each offense by showing that the marijuana, methamphetamine and drug paraphernalia were found in his residence. Young v. Commonwealth, Ky., 50 S.W.3d 148, 169–70 (2001) (surveillance camera video of victim's death throes probative of corpus delicti ). Thus, the videotape of the search was helpful to the jury in weighing Appellant's guilt. See Fields v. Commonwealth, Ky., 12 S.W.3d 275, 279 (2000) ("If relevant and probative of an issue in the case, a videotape of a crime scene, like a crime scene photograph, is admissible even though gruesome."); Mills v. Commonwealth, Ky., 996 S.W.2d 473, 489 (1999); Bedell v. Commonwealth, Ky., 870 S.W.2d 779, 783 (1993); Milburn v. Commonwealth, Ky.; 788 S.W.2d 253, 257 (1989).

■ Rather than arguing that the videotape had low probative value, Appellant claims that its relevance would have been greatly diminished if the Commonwealth would have accepted his stipulation that the hypodermic needle was not "planted." However, we have held on at least three prior occasions that a stipulation offer cannot provide the foundation for a KRE 403 argument on appeal. Furnish v. Commonwealth, Ky., 95 S.W.3d 34, 46 (2002); Barnett v. Commonwealth, Ky., 979 S.W.2d 98, 103 (1998); Gall v. Commonwealth, Ky., 607 S.W.2d 97, 107 (1980), overruled on other grounds by Payne v. Commonwealth, Ky., 623 S.W.2d 867 (1981). As we noted in Barnett, supra,

"the prosecution is permitted to prove its case by competent evidence of its own choosing, and the defendant may not stipulate away the parts of the case that he does not want the jury to see." 979 S.W.2d at 103. *Compare Old Chief v. United States,* 519 U.S. 172, 186–90, 117 S.Ct. 644, 653–55, 136 L.Ed.2d 574 (1997) (district judge abused discretion under Federal Rule of Evidence 403 by permitting government to introduce documents showing nature of defendant's prior offense and length of sentence imposed to prove prior conviction element of present offense even though defendant offered to stipulate to the existence of the prior conviction).

■ Thus, the only question is whether the potential prejudice to Appellant from playing the videotape substantially outweighed its probative value. *E.g., Commonwealth v. Higgs,* Ky., 59 S.W.3d 886, 895 (2001). The videotape was prejudicial in that it showed Appellant shirtless, bickering, being handcuffed, searched, and accusing Officer Clark of planting the hypodermic needle. The camera, as Appellant now admits, also exposes that accusation as false. However, the issue is not simply whether the videotape was prejudicial; it must have been *unduly* prejudicial in order to have triggered KRE 403. *Price v. Commonwealth,* Ky., 31 S.W.3d 885, 888 (2000) ("[T]he real issue is whether [the defendant] was *unduly* prejudiced, *i.e.,* whether the prejudice to him was unnecessary and unreasonable.").

We conclude that the videotape was not unduly prejudicial. It was not "unnecessarily or unreasonably hurtful." *Romans v. Commonwealth,* Ky., 547 S.W.2d 128, 131 (1977). As noted *supra,* the videotape was helpful to the jury's understanding of where and how the evidence was discovered. It was strongly probative of Appellant's guilt of possession of the controlled substances and drug paraphernalia found in his residence. Appellant's argument that showing the videotape "destroyed" his "presumption of innocence" is both baffling and unsupported by authority. Indeed, in the only other published Kentucky case involving the admission of a videotape showing the execution of a search warrant and the defendant's arrest, we affirmed the admission of the videotape despite "dramatic footage of the persons arrested being handcuffed by police in riot-type gear, patted down and asked to identify themselves." *Edmonds v. Commonwealth,* Ky., 906 S.W.2d 343, 346 (1995). The trial court did not abuse its discretion in allowing the Commonwealth to play the videotape.

## IV. PRIOR GUILTY PLEA.

■ Appellant next contends that the Commonwealth deliberately referred to his prior guilty plea to a charge of drug trafficking in violation of KRE 404(b), ignoring the trial court's explicit pretrial order that his prior conviction not be admitted into evidence. This objection is best understood in the context in which it occurred. Appellant's counsel called Appellant's daughter to the stand and asked her the following question:

Q: Have you ever seen your dad have any illegal drugs in the house?

A: No.

During cross-examination, the prosecutor asked:

Q: I believe [Appellant's counsel] asked whether or not you've ever seen your father sell drugs. Is that correct?

A: [inaudible].

Q: And your answer was no. Have you ever known him to sell?

A: No.

Q: Do you know why he pled guilty (pause). Let me approach your honor.

Appellant's counsel and the prosecutor approached the bench and the following colloquy ensued:

Pros: Your honor I think they opened the door on asking with regard to his previous conviction for the sale of LSD and simulated controlled substance. I thought I better approach before I got into that line of questioning.

Counsel: Judge, the entire reason that Mr. Johnson is here today is because he's being accused of being a drug dealer. He was charged with two counts of trafficking. Asking my witness whether or not she's ever seen the defendant trafficking controlled substances as related to these charges, it does not open the door to his past conduct. Furthermore, [the prosecutor's] stating in the presence of the jury, "why did your dad plead guilty . . . ."

Pros: That's the reason I stopped in the middle, judge. Before I got into it. I do think he opened the door. I think by the defense asking that question as to try to make him out as not being someone who sold drugs when in fact he's pled guilty on that charge within the last ten years prior to this.

Counsel: Further, judge, we stipulated at the beginning of this case that Mr. Johnson's prior record would not be brought up provided he did not take the stand. He has not taken the stand.

Court: Well, the question [inaudible]. But the intent was on this particular charge, the question that you asked her, I think the intent was that did she see him sell recently or around the time that these charges arose. I

think we would probably be better off if we didn't get into his prior convictions. You know how the Supreme Court dislikes that in that line of cases. So let's move on.

Counsel: Judge, I'd also ask for an instruction for the jury to disregard [the prosecutor's] statement about pleading guilty to anything.

Pros: I didn't get into any type of charge. I'm glad I stopped.

Court: I'll give the admonition if you really want it.

Counsel: Yes I do.

Court: But you are calling attention to the fact.

Pros: That's a double-edged sword.

Counsel: Yeah, I know it's a double-edged sword. But at this point the jury's already heard it. It's already been done.

Court: You can plead guilty to almost anything. [inaudible]. My admonition will be to disregard the last question. Whether Mr. Johnson has pled guilty to any offense has no bearing on whether he is guilty of this offense.

Counsel: That would be fine. That's what I want.

The Court then gave the following admonition:

Court: Ladies and gentlemen. Mr. Coleman started to ask Ms. Johnson if Mr. Johnson, the defendant, had ever pled guilty. He stopped at that point. You all disregard that particular question and the fact that Mr. Johnson may have pled guilty to any offense at any other time. It's not evidence or an indication that he's guilty of the offenses for which he's on trial here today of trafficking marijuana and trafficking methamphetamine or those four counts we are here for today

which will be set out in the instructions for you.

Appellant now contends that despite the trial court's admonition the Commonwealth's mention of an unspecified guilty plea entitles him to a new trial under KRE 404(b). We disagree.

 The trial court's admonition put this issue to rest. A jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error. *Mills v. Commonwealth*, Ky., 996 S.W.2d 473, 485 (1999) (holding that "there is nothing for us to review" when trial court cured the Commonwealth's reference to defendant's prior incarceration for an unspecified crime and the defendant failed to "present any argument to rebut the presumption that the trial court's admonition cured the error."). *See also Maxie v. Commonwealth*, Ky., 82 S.W.3d 860, 863 (2002); *Alexander v. Commonwealth*, Ky., 862 S.W.2d 856, 859 (1993), *overruled on other grounds by Stringer v. Commonwealth*, Ky., 956 S.W.2d 883 (1997). There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant, *Alexander, supra,* at 859; or (2) when the question was asked without a factual basis *and* was "inflammatory" or "highly prejudicial." *Derossett v. Commonwealth*, Ky., 867 S.W.2d 195, 198 (1993); *Bowler v. Commonwealth*, Ky., 558 S.W.2d 169, 171 (1977).

Neither exception applies here. The question had a factual basis, *i.e.,* Appellant had, in fact, previously pled guilty to a controlled substance offense. Nor was there an overwhelming probability that the jury would be unable to follow the admonition. The jury heard the prosecutor ask only, "Do you know why he pled guilty .... Let me approach your honor." The jury could have assumed that the prosecutor was referring to, *e.g.,* a speeding ticket, or that the prosecutor asked to approach the bench because he suddenly realized that he could not prove that Appellant had ever pled guilty to anything. Moreover, no further relief was requested after the admonition was given, *i.e.,* there was no request for a further admonition or a mistrial. Appellant received all the relief he requested ("That would be fine. That's what I want."); thus, there is no error to review. *Mills, supra,* at 485; *Curtis v. Commonwealth*, Ky., 474 S.W.2d 394, 396–97 (1971).

 Even if there had been no admonition, it is doubtful we would find reversible error. The daughter's testimony that she had never "seen [her] dad have any illegal drugs in the house" was inadmissible character evidence. "[C]haracter can be proven only by evidence of general reputation or by opinion, not by specific instances of conduct." *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 32 (1998).[2] Thus, the daughter's testimony opened the door, if only slightly, to inquiry on cross-examination as to specific instances of conduct. KRE 405(b). *See Commonwealth v. Higgs*, Ky., 59 S.W.3d 886, 894 (2001) (noting Commonwealth's ability to rebut even

**2.** The exception to this rule is laid out in KRE 405(c). It specifies that when the character of a person is an "essential element of a charge, claim, or defense," proof by means of specific instances of conduct may be admissible. *See United States v. Mendoza–Prado,* 314 F.3d 1099, 1103 (9th Cir.2002) (noting that an entrapment defense makes character such an "essential element" because it requires the government to prove that "the defendant was disposed to commit the criminal act prior to first being approached by Government agents.").

proper KRE 405(a) evidence). *Cf.* Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 1.10 at 30–33 (3d ed. Michie 1993) (introduction of inadmissible evidence by one party opens the door to the introduction of inadmissible evidence by the other party that negates, explains or counterbalances the prior inadmissible fact, especially when the initial inadmissible evidence is prejudicial); *United States v. Jansen,* 475 F.2d 312, 315–16 (7th Cir. 1973) (defendant's inadmissible "good character" testimony that he had never committed a crime opened the door to prosecution's evidence that he had been convicted of several misdemeanors).

## V. INSTRUCTION ON DRUG PARAPHERNALIA.

Appellant next assigns as error the trial court's drug paraphernalia instruction, contending that it improperly varied from the indictment. The original indictment focused on the plastic baggies with the cutout corners.

> *Count One:* [Appellant] [c]ommitted the offense of Possession of drug paraphernalia when he had in his possession baggies and twist ties said items being used for the distribution and ingestion of controlled substance [sic], while being armed with a firearm.

The jury instruction, in contrast, shifted the focus to the syringe and spoon.

> You will find the Defendant guilty of Possession of Drug Paraphernalia under this Instruction if, and only if, you believe from the evidence, beyond a reasonable doubt, all of the following:
>
> A. That in this county on or about July 18, 2000, and before the finding of the Indictment herein, the defendant had in his possession with the intent to use items to assist in the use or ingestion of Methamphetamine or Marijuana into the body;

AND

> B. That the defendant did so with the intent to ingest Methamphetamine or Marijuana into his body.

Appellant claims this variance deprived him of his right to have the jury instructions submit the same offense charged in the indictment, *Maddox v. Commonwealth,* Ky., 349 S.W.2d 686, 692 (1961), and of his right to a unanimous verdict pursuant to section 7 of the Kentucky Constitution, KRS 29A.280(3), and RCr. 9.82(1).

■ Again, the issue is unpreserved for appellate review. As noted in Part II of this opinion, *supra,* "[n]o party may assign as error the giving or the failure to give an instruction" unless an objection is made or an alternate instruction is tendered. RCr 9.54(2). Appellant made no objection and offered no alternative to this instruction. Accordingly, he "may not assign as error the giving" of the drug paraphernalia instruction.

■ Even if that were not so, the claim of error is without merit. The Commonwealth followed the proper procedure for amending the indictment with respect to the drug paraphernalia charge. RCr 6.16 provides:

> The court may permit an indictment . . . to be amended *any time before verdict or finding* if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. If justice requires, however, the court shall grant the defendant a continuance when such an amendment is permitted.

(Emphasis added.) During a pre-trial conference, Appellant objected to introduction of any evidence of the spoon or hypodermic needle because they were not mentioned in the indictment. The prosecutor responded that he would move to amend the indictment.

Counsel: I also am asking to exclude specifically several items that were recovered in the search again that he was not charged with. The scanner in particular. The piece of paper with police radio frequencies on it. A holster was recovered, not in the same location that the gun in question was found, but in a different location. And then there were several, there was at least one syringe removed from Mr. Johnson's back pocket found which was not named in the indictment as being part of drug paraphernalia ...

Pros: Your honor we intend to move to amend the indictment to conform to the evidence. I think that is paraphernalia, and should as well be included in the consideration of the jury.

At the close of the evidence, the prosecutor formally moved to amend the indictment to conform to the evidence. No new indictment was transcribed on paper but the trial court and the parties treated the Commonwealth's proposed jury instructions as an amendment of the indictment. Appellant registered no objection to the form of the amendment. Identifying additional items of paraphernalia did not charge Appellant with an "additional or different" offense. *E.g., Schambon v. Commonwealth,* Ky., 821 S.W.2d 804, 810 (1991); *Robards v. Commonwealth,* Ky., 419 S.W.2d 570, 573 (1967).

Appellant relies on *Maddox, supra;* but *Maddox* stands for the proposition that the indictment and jury instructions need not be perfectly matched so long as they describe the same offense: "If the guts are there the feathers are inconsequential." 349 S.W.2d at 693; *see also Washington v. Commonwealth,* Ky.App., 6 S.W.3d 384, 386–87 (1999) (affirming despite variance between the indictment and the jury instructions when defendant was not sur-

prised by the evidence and his substantial rights were not jeopardized). There simply was no variance here.

■ Appellant's argument that the instruction denied him the right to a unanimous verdict is also without merit. The fact that the Commonwealth presented evidence of several different items of paraphernalia, or even that the jurors might have based their verdict on different items of paraphernalia, does not jeopardize Appellant's right to a unanimous verdict in the absence of a failure of proof as to one of the items of paraphernalia.

> [W]hen [the jury was] presented with alternate theories of guilt in an instruction, the Commonwealth does not have to show that each juror adhered to the same theory. Rather, the Commonwealth has to show that it has met its burden of proof under all of the alternate theories presented in the instruction. Once that is shown, it becomes irrelevant which theory each individual juror believed.

*Burnett v. Commonwealth,* Ky., 31 S.W.3d 878, 883–84 (2000); *see also Ice v. Commonwealth,* Ky., 667 S.W.2d 671, 677 (1984); *Wells v. Commonwealth,* Ky., 561 S.W.2d 85, 87–88 (1978). Appellant does not assert that the Commonwealth failed to prove his possession of any of the items of drug paraphernalia beyond a reasonable doubt. Thus, even if Appellant's objection had been preserved, the instruction did not jeopardize his right to a unanimous verdict.

## VI. AMENDMENT OF METHAMPHETAMINE CHARGE.

■ Finally, Appellant argues that his right to a fair trial was compromised by the Commonwealth's amendment of count three of the indictment charging him with trafficking in a controlled substance. The indictment cited former KRS 218A.1435 as

the statute under which count three was charged. That statute provided:

(1) A person is guilty of trafficking in methamphetamine when he knowingly and unlawfully sells, transfers, distributes, dispenses, or possesses with intent to distribute methamphetamine.

(2) Trafficking in methamphetamine is a Class C felony for the first offense and a Class B felony for a second or subsequent offense.

Appellant was arrested on July 18, 2000, four days after the effective date of the repeal of KRS 218A.1435. (2000 Ky. Acts. ch. 169, § 2, eff. 7–14–00.) Thus, Appellant asserts he was indicted under a repealed statute. Appellant brought this fact to the trial court's attention by a pretrial motion to dismiss count three of the indictment. The trial court granted the motion but allowed the Commonwealth to amend the indictment to charge Appellant under KRS 218A.1412, which currently reads as follows:

*KRS 218A.1412 Trafficking in Controlled Substance in First Degree: Penalties*

(1) A person is guilty of trafficking in a controlled substance in the first degree when he knowingly and unlawfully traffics in: a controlled substance, that is classified in Schedules I or II which is a narcotic drug; a controlled substance analogue; lysergic acid diethylamide; phencyclidine; *a controlled substance that contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers;* gamma hydroxybutyric acid (GHB), including its salts, isomers, salts of isomers, and analogues; or flunitrazepam, including its salts, isomers, and salts of isomers.

. . .

(Emphasis added.) KRS 218A.1412 is also a Class C felony for the first offense and a Class B felony for a subsequent offense.

The trial court found that KRS 218A.1412 did not charge an "additional or different offense." Thus, the amendment was appropriate under RCr 6.16.

We affirm for two reasons. First, the trial court's analysis was correct. As noted in Part V of this opinion, *supra,* RCr 6.16 allows an amendment any time prior to verdict so long as the indictment does not charge an "additional or different offense." Both KRS 218A.1412 and former KRS 218A.1435 punish a first offense as a Class C felony. KRS 218A.1412 includes "methamphetamine" as a "controlled substance." The methamphetamine language was added to KRS 218A.1412(1) in the same legislation and effective the same date that KRS 218A.1435 was repealed. (2000 Ky. Acts, ch. 169, § 1, eff. 7–14–00.) The definition of "trafficking," KRS 218A.010(28), which includes possession of a controlled substance with the intent to sell, is the same when applied to KRS 218A.1412 as it was when applied to former KRS 218A.1435. Obviously, the 2000 General Assembly recognized the similarities of the statutes and purposely subsumed KRS 218A.1435 into KRS 218A.1412, probably to create consistency between KRS 218A.1412 and KRS 218A.1415, which specifically included and still includes possession of methamphetamine within the offense of possession of a controlled substance in the first degree. Thus, no "additional or different offense" was charged but only the same offense recompiled within a differently numbered statute. *See Anderson v. Commonwealth,* Ky., 63 S.W.3d 135, 141 (2001) ("simply chang[ing] the dates" on the indictment does not charge an additional or different offense); *cf. Godby v. Commonwealth,* Ky., 491 S.W.2d 647, 650 (1973) ("The omission of the citation of the statute defining the offense was not fatal if the defendants were not misled.").

Second, Appellant was *acquitted* of the "trafficking" offense previously compiled in KRS 218A.1435 and now compiled in KRS 218A.1412 and was convicted, instead, of the lesser included offense of possession of a controlled substance in the first degree. KRS 218A.1415. Prior to the repeal of KRS 218A.1435 and the amendment of KRS 218A.1412, the possession offense described in KRS 218A.1415 was a lesser included offense of both trafficking offenses. A dismissal of the charge formerly defined in KRS 218A.1435 would have only reduced that charge to the possession offense defined in KRS 218A.1415, the offense of which Appellant was actually convicted. An indictment is sufficient if it fairly informs the accused of the nature of the charged offense and does not mislead him. *Thomas v. Commonwealth,* Ky., 931 S.W.2d 446, 449 (1996).

A defendant receives sufficient notice of a lesser included offense when the specific language of the accusatory pleading adequately warns the defendant that the state will seek to prove the elements of the lesser offense, *or if the lesser offense is necessarily included within the statutory definition of the charged offense.*

41 Am.Jur.2d, *Indictments and Informations* § 299, at 899 (1995). "[P]ossession of a controlled substance is a lesser offense included within the trafficking charge." *Jackson v. Commonwealth,* Ky., 633 S.W.2d 61, 62 (1982). Thus, even if the trafficking charge cited the wrong statute, it gave Appellant notice of the offense of which he was ultimately convicted. Furthermore, although the heading of the indictment states that the indictment is for "trafficking in methamphetamine" under KRS 218A.1435, the body of count three actually recites that Appellant "committed the offense of trafficking in a controlled substance when he had trafficked [sic] a quantity of Methamphetamine for purpose

of sale, while being armed with a firearm." "Strictly speaking, the caption of the indictment itself, and the facts recited therein are not part of the finding of the grand jury." 41 Am.Jur.2d, *supra,* § 71 (1995). Thus, in case of a variance between the language of the caption and the language of the body of an indictment, the language of the body controls. *United States v. Martinez,* 981 F.2d 867, 872 (6th Cir.1992) ("The charging language is in the body of [the indictment] ...").

Thus, amending the indictment to correct the statutory citation from KRS 218A.1435 to KRS 218A.1412 neither charged a new and different offense nor prejudiced Appellant in any way. KRS 218A.1412 includes the same offense formerly defined in KRS 218A.1435 and the indictment clearly gave notice of the offense of which Appellant was convicted. *Cf. Jackson v. Commonwealth,* Ky., 20 S.W.3d 906, 908 (2000) (joinder of robbery and escape charges did not prejudice Appellant with respect to the robbery charge because he was not convicted of that offense.).

Accordingly, the judgment of convictions and the sentences imposed by the Ohio Circuit Court are affirmed.

All concur.