# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



## Supreme Court of Kentucky

2016-SC-000579-MR

PAUL COOK                                                       APPELLANT

           ON APPEAL FROM CHRISTIAN CIRCUIT COURT

V.             HONORABLE ANDREW C. SELF, JUDGE
                      NO. 15-CR-00065

COMMONWEALTH OF KENTUCKY                       APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Paul Cook, was indicted for three counts of first-degree incest (victim under twelve), three counts of first-degree sodomy (victim under twelve), three counts of first-degree sexual abuse (victim under twelve), and three counts of first-degree unlawful transaction with a minor (victim under sixteen). Cook's case proceeded to trial in the Christian Circuit Court. In Cook's first trial, his defense counsel referred to Cook's eagerness to take a polygraph test during his opening statement. The trial judge ultimately granted the Commonwealth's motion for a mistrial. When a second trial was scheduled after the mistrial, Cook filed a motion to dismiss based upon double jeopardy. The trial court denied the motion and the second trial began with a different jury. Before the trial court instructed the jury in the second trial, two of the counts of unlawful transaction with a minor were dismissed. A Christian Circuit Court jury convicted Cook of the remaining counts. He was sentenced

to twenty-five years' imprisonment. Cook now appeals this conviction as a matter of right, Ky. Const. § 110(2)(b).

## I. BACKGROUND

The charges against Cook involved his alleged sexual abuse of his stepdaughter, Sandy.[1] Sandy made the allegations of abuse while visiting her father and sister, leading to a police investigation. The details of those allegations are largely immaterial to the current appeal. However, to the extent necessary for our analysis, Sandy's testimony will be discussed below.

When police interrogated Cook regarding the abuse, a detective apparently asked if he would take a polygraph examination. In his opening statement in the first trial, defense counsel stated:

> The police aren't really there to help you when they've got you in a little room asking you questions. They're there to get evidence, and [Cook] never admitted to doing anything wrong. His story never changed. In fact, when the detective asked him if he'd take a lie detector test, he jumped on the opportunity. He wants to prove his innocence.

The Commonwealth immediately objected to this reference, and a bench conference ensued. During the bench conference, the parties discussed the appropriate remedy to cure the inadmissible statement regarding the polygraph. The Commonwealth first suggested defense counsel had opened the door to the polygraph results (which were not in Cook's favor), and the trial court should, therefore, allow the introduction of those results. After the trial

---

[1] Throughout this opinion, the minor victim's name has been changed to protect her anonymity.

judge declined to do so, the Commonwealth agreed to an admonition, but conditioned that agreement upon an opportunity to do more research on the issue and revisit it after the first break.[2] The trial court admonished the jury that it:

> [S]hould disregard any reference to a polygraph test for a number of reasons. The most important of which is that polygraph test results are not admissible in a court of law. You should not conclude that Mr. Cook either took or did not take a polygraph test based upon what has been mentioned at this point. And, certainly, you should disregard in general any reference to a polygraph test.

After the admonition, defense counsel gave the remainder of his opening statement, and then the Commonwealth began its case in chief. Although the admonition instructs jurors that polygraphs are inadmissible and they should ignore any mention of polygraph testing, it fails to address defense counsel's statement that Cook "jumped at the chance" to take the polygraph or any inferences the jury may draw therefrom. The admissibility of a polygraph is a different issue than Cook's eagerness to take the test and the implication that he had total confidence that it would establish his innocence.

The Commonwealth called Sandy as its first witness, and, at the conclusion of her testimony, the trial recessed for lunch. During the recess,

---

[2] During the bench conference, the Commonwealth stated: "Can we go ahead and get in an option if maybe on a break, if we can find anything, that would—." At this point, the trial judge cut the Commonwealth off in mid-sentence. At the end of the lunch break, the Commonwealth asked to discuss the proper remedy. The trial court, Commonwealth, and defense counsel did so during a meeting in the judge's chambers. There, the Commonwealth stated: "I requested, even though you just admonished the jury, that on our next break I'll do research to see if I have any other remedies." Defense counsel did not contradict or in any way indicate that this was an incorrect statement of the proceedings.

3

the Commonwealth indicated to the trial court that it wanted to address an issue and a meeting between the judge, the Commonwealth, and defense counsel took place in the trial judge's chambers. At the meeting, the Commonwealth stated it had researched the issue and now believed a mistrial was the appropriate remedy for the polygraph reference. Specifically, the Commonwealth stated:

> Yes, Judge. As I made the court aware when we were at the bench earlier after the objection was made regarding the polygraph test, the mention of it during [defense counsel's] opening, I requested, even though you just admonished the jury, that on our next break I'll do research to see if I have any other remedies. Because, I thought that would have opened the door or something like that for its introduction. That's not true. Pretty much all polygraphs are inadmissible in Kentucky. At this time, due to the research, our only recourse. . . is to ask for a mistrial. I don't think an admonition is enough. In the case law . . . where there is a clear inference there was a result and that the result was favorable to the party that mentions it, it's fatal to the case . . . . [A]ll of us in this room know that polygraphs are inadmissible. We feel like he knowingly misrepresented inadmissible evidence, and the way he framed it was that when KSP asked [Cook] to take a polygraph test, he jumped at the chance. Now, that creates an inference that there was a test taken and that it was favorable because why else would he mention it during his own opening statement.

Defense counsel countered that the admonition was good enough, and that the jury could follow the orders of the court and disregard the reference to the polygraph test in its deliberations.

The trial court granted the Commonwealth's motion for a mistrial. It clarified that it granted the admonition because that was the relief requested at the time, but would have granted a mistrial if that had been the request.

The trial court dismissed the jury and set a pretrial date for the second trial. Before the new trial started, Cook moved to dismiss, arguing that retrial

4

was barred by double jeopardy. The trial court denied Cook's motion and the case proceeded to a second trial. Cook was charged with three counts of incest (victim under twelve), three counts of sodomy (victim under twelve), three counts of sexual abuse (victim under twelve) and three counts of unlawful transaction with a minor (victim under sixteen). The trial court dismissed two counts of unlawful transaction with a minor before the case was submitted to the jury. Cook was convicted of the remaining charges. He was sentenced to twenty-five years' imprisonment and now appeals, arguing that the conviction was barred by double jeopardy and should be overturned.

## II. ANALYSIS

The double jeopardy clauses of the Fifth Amendment of the United States Constitution and Section 13 of the Kentucky Constitution provide that a person may not be placed in jeopardy more than once for the same crime.

In examining the double jeopardy issue in this case, we must first determine whether the mistrial was properly granted. "It is well established that the decision to grant a mistrial is within the trial court's discretion, and such a ruling will not be disturbed absent a showing of an abuse of that discretion." *Woodard v. Commonwealth*, 219 S.W.3d 723, 727 (Ky. 2007), *overruled on other grounds by Commonwealth v. Prater*, 324 S.W.3d 393 (Ky. 2010). "[W]hen determining whether the trial court abused its discretion in declaring a mistrial, 'it is necessary to examine whether there was manifest necessity to do so, since a mistrial—where no manifest necessity exists— triggers a person's constitutional protection against double jeopardy.'" *Cardine*

*v. Commonwealth*, 283 S.W.3d 641, 648 (Ky. 2009) (quoting *Radford v. Lovelace*, 212 S.W.3d 72, 80 (Ky. 2006)).

With that roadmap in mind, we must first determine if the trial court abused its discretion in granting the Commonwealth's motion for a mistrial. In order to make that determination, we must examine whether there was a manifest necessity to declare the mistrial. If no such manifest necessity existed, the trial court abused its discretion, thus implicating Cook's right to be free from double jeopardy.

Cook insists there was no manifest necessity for the mistrial. He posits the admonition to the jury cured defense counsel's reference to the polygraph examination and, therefore, the trial court abused its discretion by granting a mistrial. We disagree. The trial court acted within its discretion in determining that the polygraph reference made during opening statements created a manifest necessity for mistrial.

In *Cardine*, 283 S.W.3d at 647-48, this Court quoted the Sixth Circuit Court of Appeals with approval: "when a mistrial is declared at the behest of the prosecutor or on the court's own motion, . . . the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him, [is balanced] against the public interest in insuring that justice is meted out to offenders." *Malinovsky v. Court of Common Pleas of Lorain County*, 7 F.3d 1263, 1270–71 (6th Cir.1993). Cook also points this Court to *Arizona v. Washington*, 434 U.S. 497, 508, (1978), which held "[t]hus, the strictest scrutiny is appropriate . . . when there is reason to believe that the

6

prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." Cook argues that by declaring a mistrial, the Commonwealth was unfairly given an opportunity to strengthen its case. However, there is no evidence that was the case.

Cook further argues that the mistrial denied him the opportunity to take advantage of circumstances that increased his chances of acquittal and subjected him to a situation where his chances of being convicted were actually increased. Cook's argument in this regard fails. The advantage the Commonwealth might have gained by having another chance to procure more favorable testimony from Sandy does not negate the manifest necessity for the mistrial—a necessity created by Cook's own trial defense counsel. Furthermore, the defense had the opportunity in the second trial to impeach Sandy's testimony based upon any inconsistent statements she made in the first trial. The impeachment of Sandy's testimony would present her original testimony to the jury. Any inconsistencies in her testimony may weaken the weight the jury gives her testimony of Cook's other criminal acts. Therefore, any advantage the Commonwealth may have gained was mitigated by the defense's ability to impeach Sandy.

Cook labels Sandy's testimony during the first trial as disastrous for the Commonwealth and insists it left him with a good chance of being acquitted. While Sandy answered some questions differently than in her interview, and denied recalling other specifics, she answered many of the Commonwealth's questions. Specifically, when the Commonwealth asked her "So he made you

touch his dick with what?  With your hand?" Sandy responded, "Yes."  When

the Commonwealth asked Sandy, "Did he ever make you—at that time, um,

when you were on your parents' bed, did he ever make you put your mouth on

his dick?" Sandy also responded in the affirmative.  Another exchange between

the Commonwealth and Sandy went as follows:

> Commonwealth:  Did you ever go with Paul to, um, pick up Caleb
> at school?
>
> Sandy: Yes.
>
> Commonwealth:  Okay.  Can you tell us if anything happened
> during those times?
>
> Sandy:  Yes.
>
> Commonwealth:  Tell us about that.
>
> Sandy: Well, since we were waiting too long, we went down to—into
> a parking lot—
>
> Commonwealth:  Uh-huh
>
> Sandy:  —at these stores—they were in the truck and he started to
> make me put my mouth on his private part.
>
> Commonwealth:  Okay.  Did it happen just one time or more than
> one time?
>
> Sandy: More.
>
> Commonwealth:  Okay. Okay. Would he ever touch you when he
> would do that?
>
> Sandy:  No.
>
> Commonwealth:  Okay. Would he touch himself when you did
> that?
>
> Sandy: Yes.

With this testimony in mind, the Commonwealth's advantage as portrayed by Cook is certainly lessened. While the evidence may have been stronger at the second trial, there was certainly not a void of such in the first. There is no evidence the Commonwealth used its motion for a mistrial to gain a tactical advantage. Rather, defense counsel created a manifest necessity through its comments regarding the polygraph, which he knew or should have known were inadmissible and highly prejudicial. As noted, the retrial also gave the defense the opportunity to impeach Sandy with her testimony from the first trial.

Cook insists that a manifest necessity to grant the mistrial did not exist here, as an admonition cured any error brought about. We noted in *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003), "[a] jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." We went on in that case to enumerate exceptions to that general rule:

> There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis and was "inflammatory" or "highly prejudicial."

*Id.* (internal citations omitted).

In this case, defense counsel stated Cook "jumped at" the opportunity to take a polygraph examination to prove his innocence. The Commonwealth objected, and an admonition was granted as a remedy. Again, the admonition stated:

9

> [Y]ou should disregard any reference to a polygraph test for a number of reasons. The most important of which is that polygraph test results are not admissible in a court of law. You should not conclude that Mr. Cook either took or did not take a polygraph test based on what had been mentioned at this point. And, certainly, you should disregard, in general, any reference to a polygraph test.

This admonition was inadequate to address the polygraph reference. Here, the general presumption that the admonition cured the error is rebutted by "an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating" to the Commonwealth's case. *Id.* The admonition did not go to Cook's eagerness to take the polygraph, and it was impossible for the Commonwealth to contradict the inference that Cook, therefore, passed the polygraph. The effect of the inadmissible statement was devastating to the Commonwealth's case.

Furthermore, *Johnson*'s second exception also applies in the case at bar. The "fact" that Cook took a polygraph was inadmissible. Therefore, so far as this case is concerned, there is no factual basis for defense counsel's statement. Defense counsel knew (or, at the very least, should have known) the Commonwealth could not rebut the inference the jury could draw from his statement. The impact was highly prejudicial.

In *Ice v. Commonwealth*, 667 S.W.2d 671, 675 (Ky. 1984), this Court held that the mere mention of a polygraph examination was prejudicial. Therein we held, "[w]e have not only excluded the evidence of polygraph examiners, but excluded mention of the taking of a polygraph, the purpose of which is to

10

bolster the claim of credibility or lack of credibility of a particular witness or defendant." Here, trial defense counsel's statement that Cook "jumped at" the opportunity to take a polygraph to prove his innocence raises an inference that not only did Cook take the polygraph test, but that the results were favorable to his defense. As the Commonwealth pointed out at trial: why else would defense counsel bring up the test in his opening statement? This inference prejudiced the Commonwealth's interest in the pursuit of justice.

It is clear that a great potential for jury bias existed after Cook's attorney's opening statement. "[T]his Court and our predecessor Court have long disapproved evidence not only about the results of polygraph exams, but even about offers or refusals to take them." *Lee v. Commonwealth*, No. 2012-SC-000796-MR, 2014 WL 4160143, at *4 (Ky. Aug. 21, 2014) citing *Roberts v. Commonwealth*, 657 S.W.2d 943 (Ky.1983) (citations omitted). "[I]ntroduction of evidence that a defendant failed a polygraph exam, even evidence merely implying such a failure, we have held to be an error warranting a mistrial." *Id.* (citing *Morgan v. Commonwealth*, 809 S.W.2d 704 (Ky.1991)).

As noted, "when determining whether the trial court abused its discretion in declaring a mistrial, 'it is necessary to examine whether there was manifest necessity to do so, since a mistrial—where no manifest necessity exists—triggers a person's constitutional protection against double jeopardy.'" *Cardine v. Commonwealth*, 283 S.W.3d 641, 648 (Ky. 2009) (citing *Radford v. Lovelace*, 212 S.W.3d 72 (Ky. 2006)). Cook argues that the polygraph reference did not constitute a manifest necessity for a mistrial as the reference was not

11

clear that a polygraph test had been given or that there was a clear inference as to the results of the test. However, "[m]anifest necessity has been described as an 'urgent or real necessity.' The propriety of granting a mistrial is determined on a case by case basis." *Commonwealth v. Scott*, 12 S.W.3d 682, 684 (Ky. 2000).

The requisite degree of manifest necessity for granting a mistrial was satisfied in this case, as the reference created an inference as to the results of the polygraph test. This Court has held that "[t]here must arise a clear inference that there was a result and that the result was favorable, or some other manner in which the inference could be deemed prejudicial." *Morgan v. Commonwealth*, 809 S.W.2d 704, 706 (Ky. 1991) (citing *McQueen v. Commonwealth*, 669 S.W.2d 519 (Ky. 1984)). The manner in which defense counsel referred to the polygraph test and the eagerness of Cook to take the examination, gives rise to an inference that the result of the polygraph exam was favorable to Cook.

Furthermore, "[w]hen determining whether there was manifest necessity to declare a mistrial, we must consider whether the statements made . . . constitute 'improper evidence which prejudice[d] the Commonwealth's right to a fair trial.'" *Sneed v. Burress*, 500 S.W.3d 791, 793 (Ky. 2016). Cook's attorney's statements refer to inadmissible evidence that the Commonwealth is not able to counter. Therefore, the Commonwealth's right to a fair trial is prejudiced.

12

In reviewing a mistrial, "we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Arizona v. Washington*, 434 U.S. at 511. Here, defense counsel referred to inadmissible evidence during his opening statement. It is true that "[o]pening and closing statements are not evidence and wide latitude is allowed in both" *Wheeler v. Commonwealth*, 121 S.W.3d 173, 180 (Ky. 2003), however, this Court cannot extend that latitude to include the reference of a polygraph test.

"[T]he principle of double jeopardy does not prevent re-trial if the proceedings are terminated because '[t]he trial court, in exercise of its discretion finds that the termination is manifestly necessary.'" *Commonwealth v. Scott*, 12 S.W.3d 682, 684 (Ky. 2000). We hold that the trial court did not abuse its discretion in finding a manifest necessity to declare a mistrial. Cook's retrial was not barred by double jeopardy as the trial court did not abuse its discretion in the declaration of a mistrial.

### III. CONCLUSION

For the foregoing reasons, we affirm Appellant's convictions and corresponding sentence.

All sitting. All concur.

13

COUNSEL FOR APPELLANT:

Michael Thompson
Oak Grove, KY

Allison Coffeen Mohon
Mohon Law


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General