Jason Allen DANT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2006–SC–000505–MR.

Supreme Court of Kentucky.

May 22, 2008.

Rehearing Denied Aug. 21, 2008.

---

**32.** 18 U.S.C.1951(a).

**33.** *Stirone v. U.S.*, 361 U.S. 212, 215 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

**14**

Kathleen Kallaher Schmidt, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for Appellant.

Jack Conway, Attorney General, Henry Albert Flores, Jr., Assistant Attorney, General Office of Criminal Appeals, Frankfort, KY, for Appellee.

Opinion of the Court by Justice ABRAMSON.

Jason Dant appeals as a matter of right from a June 15, 2006 Judgment of the Hancock Circuit Court convicting him of wanton murder. The victim in this case was Addryana Johnson, the seven-month-old daughter of Dant's live-in girlfriend, April Johnson. On the morning of January 23, 2005, Dant awoke and heard Addryana struggling to breathe. Dant claimed that he tried to restore Addryana's breathing by shaking her a little to help her breathe. Addryana was eventually taken by an ambulance to the hospital, where she was pronounced dead. An autopsy revealed that Addryana had died from a subdural hematoma, or what is commonly known as "shaken baby syndrome." Dant was arrested on January 24, 2005, and indicted by a Hancock County Grand Jury on February 7, 2005 for the murder of Addryana

Johnson. After a jury trial resulted in Dant being found guilty of wanton murder, he was sentenced to life imprisonment.

On appeal, Dant contends that the trial court erred by (1) allowing inadmissible hearsay statements and evidence of his prior bad acts to be introduced through the testimonies of LeDeanna Taylor, Cindy Goatee, Hannah Warner Hall, and Kim Stearsman; (2) permitting the Commonwealth to admit gruesome, autopsy photographs of the baby's skull and brain during Dr. Schluckebier's testimony; and (3) allowing the Commonwealth to tell the jury in its closing argument that they were not here to try April Johnson, the victim's mother, and that her issues would be dealt with in a later proceeding. After reviewing the record in this case and the applicable law, we disagree with Dant's alleged claims of error and, thus, we affirm the Judgment of the Hancock Circuit Court.

## RELEVANT FACTS

When the events surrounding this case transpired, Jason Dant and April Johnson were living together with their two-year-old daughter, Katilyn Dant,[1] and April's seven-month-old daughter by another relationship, Addryana Johnson, in Lewisport, Kentucky. Although Dant was not Addryana's biological father (April and Dant split up for a period after Katilyn was born, at which point April began seeing Trey Clarke, who was Addryana's father), Dant, April, and Katilyn had been living together since before Addryana was born and continued to live together after her birth. According to Dant's statement, on the morning of January 23, 2005, he woke up and heard Addryana gasping for breath. Addryana had been sick several days previously with a high temperature. According to the statement he gave to the

police, Dant took Addryana into the living room and gave her some cough medicine with a decongestant to help her breathing. He also ran a bath for her. When it appeared that Addryana had stopped breathing, Dant stated that he shook her a little to help her breathe. When this did not help, Dant woke up April and informed her of the situation. April immediately went to find Troy Roberts, an emergency medical technician who lived four trailers down from theirs, while Dant began performing CPR on Addryana. Troy Roberts testified at trial that upon arriving at Dant's trailer, he encountered Dant attempting to give Addryana CPR. When he examined Addryana, however, she had no pulse and had mucus around her nose. Roberts then radioed for an ambulance. The ambulance and an Advanced Life Support Unit arrived on the scene and took Addryana and her family to the hospital.

Kim Stearsman, who was one of the nurses working in the emergency room on the night Addryana died, testified at trial that when April and Dant first arrived at the hospital, April was relatively calm and told Dant that he should not blame himself for what happened. However, after Addryana was pronounced dead and Stearsman returned to the family in order to ask them if they had had sufficient time to view the body, Stearsman stated that April was yelling at Dant, saying that she would still have her baby if it were not for him and that this was all his fault. Stearsman testified that she could not tell if Dant disputed April's statement, but that Dant eventually left the room crying.

The Deputy Coroner, Michael Postlewaite, testified that upon examining Addryana's body externally, he found no significant signs of physical trauma. After listing her cause of death as an "in-

---

1. This child's name is spelled both as "Kaitlyn" and "Katilyn" in the briefs of the parties. There being no clear spelling of her name in the record, we are using the spelling of "Katilyn," as reflected in the appellant's brief.

flicted closed head injury," Postlewaite transferred Addryana's body to Madisonville, Kentucky, where the regional medical examiner, Dr. Deidre Schluckebier, performed an autopsy. Prior to learning the results of the autopsy, Chief Garner of the Lewisport Police Department contacted Jason Dant and April Johnson regarding Addryana's death. On January 24, 2005, Chief Garner interviewed both Dant and Johnson at the police department, during which they gave similar statements recounting the events of the previous night as described above. Chief Garner then called the regional medical examiner to corroborate Dant's statement, at which point Dr. Schluckebier confirmed that Addryana had died from the type of head trauma that results from a baby's head being thrown back and forth with great force. Since Dant had previously told Chief Garner that he had shaken Addryana in order to help her breathe, Chief Garner placed him under arrest. The following day, April Johnson contacted Chief Garner in order to give him a different statement. April stated that on the day before Addryana's death, she and Dant were arguing over whether someone had given Addryana her medicine. At one point, April told Dant to "shut up." According to April's statement, Dant then pushed April into a fish tank, threw her on the couch, and choked her twice. April also stated that even though she never saw Dant do anything to Addryana on January 23, he told her at the hospital that he was sorry, that he knew he would be blamed for Addryana's death, and that he knew he would lose her and Katilyn.

In addition to Dr. Schluckebier's testimony detailing the specific head trauma Addryana suffered from being shaken with great force, the Commonwealth introduced evidence of Dant's prior abuse of Addryana through the testimony of his and April's coworkers, LeDeanna Taylor and Cindy Goatee. Both women testified that approximately three days before Addryana's death, while April and Dant were arguing with each other at work, they heard April tell Dant that he was the one who "puts Addryana in the corner and smacks her on the head when she does not mind him." Dant did not deny this accusation, but rather, replied that he was tired of working forty hours a week to support "a kid" that did not belong to him. Furthermore, through the testimony of Dant's former girlfriend, Hannah Hall, with whom Dant lived in August 2003, the jury learned that when Dant's own daughter, Katilyn, was approximately six months old, he would hold her in a corner and push her face against the wall when she cried. Hall testified that Dant also would wrap Katilyn in a blanket so tight that she would be unable to move, smack her bottom when she cried, blow in her face, and shake her to make her stop crying. Hall also stated that Dant physically abused her sixteen-month-old son, Isaac, revealing that on one occasion when Isaac was crying, Dant hit Isaac in the face so many times he left fingerprints and bruising.

Following the Commonwealth's case-in-chief, Dant called as witnesses his and April's former roommates, all of whom testified that although they never saw Dant abuse Addryana, Dant became angrier and more apt to "fly off the handle" the longer they lived with him. Dant's former boss and his oldest brother also testified on his behalf, both stating that they never saw Dant abuse Katilyn or Addryana and that they had recently become concerned about Dant's mental health because of his odd, apathetic behavior. Lastly, Dant called Dr. Candace Walker, who is a psychiatrist at the Kentucky Correctional Psychiatric Center. After discussing Dant's mental health, which had become stable since his arrest with the aid of several medications, Dr. Walker testified regarding what Dant had told her about the night of Addryana's

death. Dr. Walker stated that during her evaluation of Dant, he told her that when he heard Addryana wheezing on the morning of January 23, he picked her up and put her on the couch in the living room. Dant stated that when Addryana started to cry, he took her into the bathroom because he was afraid someone would hear her crying.[2] Dant then told Dr. Walker that he shook Addryana. At this point, Addryana stopped crying, but Dant stated that she also had a dazed look on her face and had stopped breathing. According to what Dant told Dr. Walker, it was at this point that Dant woke up April Johnson and began performing CPR on Addryana.

On June 1, 2006, after hearing all the evidence presented, the jury found Dant guilty of wanton murder and recommended that he receive a sentence of life imprisonment. On June 20, 2006, the Hancock Circuit Court entered its judgment convicting Dant of wanton murder and sentencing him to life in prison in accord with the jury's recommendation. This appeal followed.

## ANALYSIS

I. **The Trial Court Violated Neither the Hearsay Rules Nor the Provisions of KRE 404(b) When It Admitted the Testimony of LeDeanna Taylor, Cindy Goatee, and Hannah Hall. Furthermore, Dant's Objection to the Admission of Kim Stearsman's Testimony Is Not Preserved For Review.**

Prior to trial, Dant objected to the testimonies of LeDeanna Taylor and Cindy Goatee, both co-workers of his and April Johnson's, on the ground that they violated the provisions in KRE 404(b) and constituted inadmissible hearsay. Part of Taylor's and Goatee's testimony involved an argument they overheard at work between Dant and April approximately three days before Addryana's death, during which April told Dant that he was the one who puts Addryana into a corner and smacks her on the head when she does not mind him. During his pre-trial motion to have this testimony excluded, Dant argued that this evidence of a prior bad act violated KRE 404(b) and that April's statement, as told to the jury by Taylor and Goatee, was inadmissible hearsay. Although the trial judge reserved his ruling on the hearsay issue until the witnesses testified at trial, he ruled that Taylor and Goatee could testify about Dant's prior bad act because it was likely evidence of a common scheme. At trial, Dant objected again to the admission of April's statement during Taylor's testimony, arguing that it was prejudicial and hearsay. In response, the Commonwealth argued that since Dant did not deny April's accusation, but rather replied that he was tired of working forty hours a week to support a kid who was not his, he adopted April's statement and it was admissible as an adoptive admission. The trial court agreed with the Commonwealth and ruled that April's statement could come in through Taylor's testimony because it constituted an adoptive admission per KRE 801A(b)(2).

---

**2.** In his interview with Dr. Walker, Dant told her that he thought his trailer was bugged and that if people heard Addryana crying, they would take her away from him. Dr. Walker testified that based on her observations, Dant was suffering from a paranoid psychosis at the time of Addryana's death, but that his psychosis was eventually resolved with treatment. Although defense counsel never admitted at trial that Dant had anything to do with Addryana's death, Dant nonetheless presented evidence of an insanity defense and asked the jury to consider his mental health if they wanted to hold him accountable for Addryana's death. Although the jury was given the option of finding Dant not guilty by reason of insanity or guilty but mentally ill, they rejected both options and found Dant guilty of wanton murder.

Before discussing whether April's statement regarding Dant's prior bad act is relevant under KRE 404(b), this Court must first determine whether her statement is admissible as an exception to the hearsay rules. A trial court has broad discretion regarding the admissibility of evidence, and its decision in evidentiary matters will not be disturbed on appeal absent a clear abuse of that discretion. *Simpson v. Commonwealth*, 889 S.W.2d 781, 783 (Ky.1994). This Court has held that "[t]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). Since it was not unreasonable for the trial judge in this instance to admit April Johnson's statement as an adoptive admission, we disagree with Dant's argument and find no violation of the hearsay rules.

**A. The Trial Court Did Not Abuse Its Discretion By Admitting April Johnson's Statement as an Adoptive Admission.**

 According to KRE 801 A(b)(2),

> A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is: (2)[a] statement of which the party has manifested an adoption or belief in its truth.

Similarly, as this Court held in *Marshall v. Commonwealth*, 60 S.W.3d 513, 521 (Ky. 2001):

> When incriminating statements are made in the presence of an accused under circumstances that would normally call for his denial of the statements, and it is clear that the accused understood the statements, yet did not contradict them, the statements are admissible as tacit, or adoptive admissions.

In Dant's case, April's accusations were made in the presence of Dant and his two coworkers, Taylor and Goatee. Although Dant did not remain silent after April accused him of abusing her seven-month-old daughter, he also did not deny or contradict that he engaged in this conduct. Rather, both Taylor and Goatee testified that in response to April's allegation, Dant replied that he was tired of working forty hours a week to support a child that was not his. If Dant had remained silent after April's accusation, it would have been clearer that he was acquiescing in the truth of her statement. However, Dant's reply nonetheless indicated that he understood April's accusation and chose not to deny it even though it was made "under circumstances that would normally call for his denial." *Id.* Thus, because Dant could have corrected April's statement but chose not to contradict her accusation, we find that the trial court did not abuse its discretion when it admitted April's statement as an adoptive admission.

**B. Dant's Prior Bad Act, As Revealed Through April's Statement, Was Relevant Under KRE 404(b) to Demonstrate His Pattern of Abusing Addryana, and The Statement's Probative Value Was Not Outweighed By Its Prejudicial Effect.**

 In its pre-trial ruling, the trial court allowed evidence of Dant previously putting Addryana in the corner and smacking her on the head when she did not mind him to be admitted because it showed Dant's common plan or scheme. KRE 404(b)(1) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A trial court has the discretion to admit evidence of prior bad acts as long as that evidence is "relevant, probative, and the potential for prejudice does not outweigh the probative value of such evidence." *Parker v. Commonwealth*, 952 S.W.2d 209, 213 (Ky.1997). The exceptions stated in KRE 404(b)(1) provide an illustrative list of when prior bad act evidence can be relevant not to prove the criminal disposition of the accused, but rather, to prove that the defendant actually committed the crime charged. *Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky.2007). One exception that has been recognized by Kentucky courts to admit prior bad act evidence but that is not listed in KRE 404(b)(1) is the pattern of conduct exception or modus operandi. *Id.*

The Commonwealth asserts that the evidence of Dant's prior abuse of Addryana is relevant to proving Dant's pattern of conduct or his modus operandi. However, this Court has held that for a prior bad act to be admitted to show a pattern of conduct, "the facts surrounding the prior misconduct must be so strikingly similar to the charged offense as to create a reasonable probability that (1) the acts were committed by the same person, and/or (2) the acts were accompanied by the same *mens rea*". *English*, 993 S.W.2d at 945. Otherwise, the prior crime or bad act is not relevant in proving whether the defendant committed the current crime charged. *See Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky.1994).

What makes this inquiry particularly difficult in Dant's case is that the specific facts surrounding the abuse that caused Addryana's death are relatively unclear. No specific facts were alleged regarding when or exactly how Addryana was abused

on the night of her death. It is certain, however, that Addryana died from head trauma. Her autopsy revealed that this head trauma resulted from being struck in the head and from having her head violently shaken back and forth. Although there is no evidence that Dant put Addryana in a corner for not minding him on the night of her death, the evidence of Dant previously smacking the infant on the head could constitute a pattern of conduct since her death was partly caused by being struck on the head. Similarly, the prior act of abuse and what the Commonwealth alleged occurred at the time of Addryana's death were similar enough to show also that Dant had the same mental state during both acts of abuse: on both occasions, Dant used violence in response to the infant Addryana's behavior. Therefore, because the evidence of Dant previously smacking Addryana on the head when she did not mind him could support a "reasonable probability" that Dant also struck Addryana on the head and/or used violence to stop her from crying on the night of her death, we find that the trial court did not abuse its discretion when it determined that this evidence was relevant under KRE 404(b). *See also Parker*, 952 S.W.2d at 213 (noting that in cases of child abuse, "the probative link between evidence of prior bad acts and a particular defendant does not have to be established by direct evidence").

This conclusion is further supported by this Court's holding in *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky.2002), in which we ruled that evidence of prior, similar acts of abuse against the same victim of the alleged crime is "almost always admissible" under KRE 404(b) to prove the defendant's "intent, plan, or absence of mistake or accident." Since the probative value of this evidence is not outweighed by its prejudicial effect, we affirm

the trial court's ruling on the admissibility of Dant's prior abuse of Addryana.

### B. Because Dant Consistently Responded to a Crying Child with Physical Abuse, Hannah Hall's Testimony Was Relevant to Show His Intention and Pattern of Abusive Conduct.

Prior to Hannah Hall's testimony at trial, Dant objected to her statements about his prior bad acts with regard to his daughter, Katilyn, and her son, Isaac, arguing that the incidents occurred two years before Addryana's death and that the prejudicial effect outweighed the evidence's probative value. In overruling Dant's objection, the trial court found that Hall's testimony regarding Dant's prior conduct was relevant to show an absence of mistake or accident, and its probative value was not outweighed by its prejudicial effect. Thus, Hall testified at trial that when she and Dant were in a relationship and living together in 2003, she saw Dant holding his daughter, Katilyn, who was six-months-old at the time, up against a corner and pushing her face against the wall when she cried. Hall also testified that when Katilyn would cry, Dant would smack her bottom, blow in her face, and shake her. Dant would also wrap Katilyn in a blanket so that she would be unable to move. Furthermore, Hall stated that on one occasion, when her sixteen-month-old son, Isaac, was crying, Dant hit Isaac in the face so many times he left fingerprints and bruising.

Dant argues on appeal that since he admitted that he shook Addryana on the morning of her death, absence of mistake is not an issue. In addition, Dant contends that Hall's allegations of prior abuse are not similar enough to the abuse that caused Addryana's death to be relevant. Regarding Hall's statement that Dant used to shake Katilyn when she cried, we find that this prior bad act fits squarely into the pattern of conduct or modus operandi exception to the admissibility of KRE 404(b) evidence. In *English, supra*, this Court allowed evidence of prior acts of sexual misconduct against other victims to be admitted because "the evidence was offered to show a modus operandi for the purpose of proving motive, intent, knowledge, and the absence of mistake or accident." *English*, 993 S.W.2d at 945. In that case, since the defendant had told the police that he "might" have touched one of the victims by mistake, the prior bad act evidence demonstrating that the defendant had previously touched victims on purpose and for his own sexual gratification was relevant to show his intent, absence of mistake, and motive. *Id.* In Dant's case, since he admitted to shaking Addryana a little in order to help her breathe, the evidence that he had previously shaken Katilyn in order to stop her from crying is certainly relevant to show his motive and intent in shaking Addryana on the night of her death, particularly since evidence was presented at trial that Dant was worried someone would hear Addryana crying. Therefore, since this prior act was highly probative of Dant's pattern of shaking children to keep them from crying, its probative value was not outweighed by its prejudicial effect and the trial court did not abuse its discretion in admitting it.

The other prior bad acts revealed through Hall's testimony included that on previous occasions when Katilyn, who was six-months old at the time, would cry, Dant would push Katilyn up against a corner, smack her bottom, blow in her face, or wrap her very tightly in a blanket. Similarly, when sixteen-month old Isaac would cry he would hit Isaac. Although Dant is correct that these acts of abuse are not precisely identical to the physical act of shaking a baby, the fact remains that

each time an infant's crying would disturb Dant, he would respond with a violent, physical act of abuse. While the pattern of conduct exception to KRE 404(b) evidence requires the prior act to be "strikingly similar" to the crime charged, *English*, 993 S.W.2d at 945, we find that this element of similarity is met in this instance because the same circumstance—a baby crying—and a similar reaction—violent physical conduct—were common elements present each time Dant abused Katilyn, Isaac, and Addryana. Furthermore, Dr. Walker, the psychiatrist at the Kentucky Correctional Psychiatric Center, testified that Dant told her that he took Addryana into the bathroom because he was afraid someone would hear her crying. Thus, in Dant's case, the evidence strongly reveals a common element that precedes each act of physical abuse—a crying baby. Despite the fact that each physical act was not identical, because each action was prompted by a crying child, Hall's testimony regarding Dant's prior abuse of Katilyn and Isaac fits within the pattern of conduct exception and was properly admitted at trial.

**C. Dant Did Not Object to Kim Stearsman's Testimony at Trial, and Thus, His Argument That She Discussed Hearsay Statements Is Unpreserved.**

■ At trial, Kim Stearsman, an emergency room nurse, testified regarding her observations of April Johnson and Dant while they were at the hospital. Specifically, Stearsman stated that after April and Dant found out Addryana had died, April yelled at Dant and stated that she would still have her baby if it were not for him. Dant recognizes in his brief that he did not object to Kim Stearsman's testimony at trial. This alleged error is not preserved for review and we will not consider it on appeal. RCr 9.22; *Edmonds v. Commonwealth*, 906 S.W.2d 343, 346 (Ky.

1995). In addition, Dant neither requested palpable error review in his brief nor argued that this alleged error constituted manifest injustice. Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the Appellant. *See Thomas v. Commonwealth*, 153 S.W.3d 772, 782 (Ky.2004); *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky.2005). Since Dant did not request palpable error review on appeal, we decline to address it in this opinion.

**D. The Trial Court Properly Determined That Dant Received Adequate Notice Under KRE 404(c) of the Commonwealth's Intent to Introduce Evidence of His Prior Bad Acts.**

■ In a pre-trial motion *in limine*, Dant challenged both the timeliness of the Commonwealth's notice required by KRE 404(c) and the admissibility of the KRE 404(b) prior bad act evidence that the Commonwealth intended to introduce at trial. The trial court disagreed and allowed the Commonwealth to present its KRE 404(b) evidence during trial. Regarding the notice issue, Dant argues on appeal that since he received notice from the Commonwealth on the Friday before a holiday weekend, with the trial beginning on Tuesday, he did not receive "reasonable notice" as required by KRE 404(c). We disagree.

According to KRE 404(c), if the Commonwealth intends to introduce prior, bad act evidence pursuant to KRE 404(b), "it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence." This Court has held that "[t]he intent of KRE 404(c) is to provide the accused with an opportunity to challenge the admissibility of this evidence through a motion *in limine* and to deal with the

reliability and prejudice problems at trial." *Bowling v. Commonwealth,* 942 S.W.2d 293, 300 (Ky.1997) (*quoting* Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 2.25 (3rd Ed.1993)). In *Bowling,* we concluded that since the defendant "had actual notice and did raise the 404(b) issue in his in limine motion," he did not suffer prejudice and KRE 404(c) was satisfied. *Id.* Similarly, in Dant's case, even though he received notice only a few days before his trial began, he nonetheless was able to file a motion *in limine,* in which he challenged both the adequacy of the notice and the substantive issue of whether the KRE 404(b) evidence was admissible. Furthermore, Dant was able to challenge the admissibility of this evidence again during trial. Since Dant was given actual notice of the Commonwealth's intent to introduce KRE 404(b) evidence in time to adequately challenge its admissibility, we conclude that he did not suffer any prejudice and the trial court did not err in finding that the notice requirement of KRE 404(c) was satisfied.

## II. The Trial Court Properly Admitted the Autopsy Photographs Because They Were Directly Related to Dr. Schluckebier's Testimony Regarding Addryana's Internal Brain Injuries.

During Dant's trial, Dr. Schluckebier gave a detailed account of the results of Addryana's autopsy, specifically describing her many internal injuries and using color photographs to better explain her findings. Dr. Schluckebier testified that upon conducting an initial autopsy of Addryana, she found five different hemorrhages or instances of internal bleeding present in and around Addryana's brain. First, Addryana had a hemorrhage on the top of her skull, which was consistent with something hitting the top of her head or her head hitting something. Second, she had a hemorrhage under the thick, subdural membrane that covers the brain. Third, she had a subarachnoid hemorrhage, which is an injury to the thin membrane surrounding the brain. Fourth, Addryana had infarct areas of her brain, which are caused by blood clots that leave behind dead tissue in the brain. Lastly, after removing Addryana's brain, Dr. Schluckebier found more bleeding at the base of her skull, which she discovered was caused by a hemorrhage in her retina and optic nerve. Other than the first hemorrhage mentioned, which was caused by something hitting Addryana's head, Dr. Schluckebier stated that the remaining four hemorrhages were all caused by the fast acceleration and deceleration of the brain, or her head being thrown back and forth with great force.

After performing Addryana's autopsy, Dr. Schluckebier conducted a follow-up examination the next day in order to determine if the infant had any latent injuries that would not be discoverable through an initial autopsy. During this follow-up exam, Dr. Schluckebier found more infarct areas in Addryana's brain and concluded that some of her injuries were weeks old. She also found that the cells in her lungs contained iron, which is caused by bleeding in the lungs. Dr. Schluckebier stated that the presence of this iron in Addryana's lungs is an indication of someone physically suffocating her but not to the point of death. She also testified that this injury could be consistent with someone trying to stop a baby from crying, although she noted that her finding in that regard was not conclusive. Dr. Schluckebier concluded that Addryana's recent and prior injuries all contributed to her death and ultimately described the cause of her death as trauma to the head. She also stated that Addryana's injuries would produce symp-

toms such as an altered consciousness, gasping for breath, lethargy and coughing.

To demonstrate Addryana's head injuries, the Commonwealth introduced six colored photographs taken during Dr. Schluckebier's autopsy. The photographs were of different portions of Addryana's brain and skull, and they depicted the hemorrhage on the top of her skull, the subdural hematoma, the subarachnoid hemorrhage, the infarct areas of her brain, the blood at the base of her skull, and the hemorrhage in her eye. In some of the pictures, the baby's scalp was peeled back to reveal the injured areas of the brain, while in others, the brain was completely removed from the skull. Dr. Schluckebier used a laser pointer to identify where in the photographs Addryana's hemorrhages were located. Dant objected to the admission of these photographs, arguing that other means could have been employed to illustrate Dr. Schluckebier's findings and that the prejudice resulting from the photographs outweighed their probative value. The trial court overruled Dant's objection and held that the photos were admissible because they were tied directly to Dr. Schluckebier's testimony regarding Addryana's internal injuries.

Dant argues on appeal that since there was no material issue regarding what caused Addryana's death and since the photos had little or no probative value, their admission should constitute reversible error. We disagree. "The general rule is that a photograph, otherwise admissible, does not become inadmissible simply because it is gruesome and the crime is heinous." *Funk v. Commonwealth*, 842 S.W.2d 476, 479 (Ky.1992). This Court stated in *Adkins v. Commonwealth*, 96 S.W.3d 779, 794 (Ky.2003), that

[t]he rule prohibiting the exhibition of inflammatory evidence to a jury does not preclude the revelation of the true facts surrounding the commission of a crime when these facts are relevant and necessary. Were the rule otherwise, the state would be precluded from proving the commission of a crime that is by nature heinous and repulsive.

Although Addryana's death, her injuries, and the photographs depicting her head trauma were indeed gruesome, the Commonwealth was nonetheless entitled to put forth relevant, demonstrative proof regarding the injuries that caused her death. Since Addryana's injuries resulted in fatal internal bleeding, the photographs depicting her different types of hemorrhages were directly relevant to her cause of death and thus, properly admitted at trial.

This result is consistent with this Court's previous holdings regarding whether autopsy photographs of child-victims were properly admitted at trial. This Court held in *Ratliff v. Commonwealth*, 194 S.W.3d 258, 271 (Ky.2006), that even the most gruesome photographs of the twenty-month-old victim, L.M., which showed her "bowels (revealing the internal damage to L.M's abdomen) or L.M.'s skull with the scalp peeled away from it so as to reveal the deep-tissue bruising on the top of the head," did not reach the level necessary for this Court to reverse a trial court's ruling on admission. Ultimately, this Court ruled in *Ratliff* that "the deep-tissue injuries to L.M.'s scalp and the internal bruising and hemorrhaging of her abdomen could not be proven by demonstrative evidence unless photographs were taken during the autopsy." *Id.* at 272. Similarly, in *Davis v. Commonwealth*, 967 S.W.2d 574, 579 (Ky.1998), this Court held that autopsy photographs of the two-year-old victim's brain were relevant to prove her internal injuries and her cause of death, which was a blunt force trauma to the head.

Although Dant cites to *Holland v. Commonwealth*, 703 S.W.2d 876, 879 (Ky.1985), for the proposition that gruesome photographs should not be admitted if they go "beyond demonstrating proof of a contested relevant fact," the pictures erroneously admitted in *Holland* revealed that the victim's "body had been subjected to extensive animal mutilation" and were not at all relevant to the victim's cause of death. The photographs admitted in Dant's case, however, related directly to Addryana's multiple internal hemorrhages and constituted relevant proof of the injuries that caused her death. Therefore, the trial court properly admitted the autopsy photographs and we find no error with regard to this issue.

### III. The Commonwealth's Reference to April Johnson in Its Closing Argument Did Not Constitute Palpable Error.

■ In Dant's closing argument, he pointed out to the jury that April Johnson had not testified during trial. In response, the prosecutor stated in his closing argument, "all I can say is we're not here to try [April Johnson]; her issues will be dealt with at a later time at a later proceeding. We're here to address what [Dant] did." Although Dant did not object to this statement at trial, he now contends that its admission constitutes palpable error under RCr 10.26 and entitles him to a new trial. Dant cites to two cases in furtherance of this argument, both of which prohibit the Commonwealth from referring to a co-indictee's subsequent conviction as evidence of the guilt of the defendant now standing trial. *Parido v. Commonwealth*, 547 S.W.2d 125 (Ky.1977); *Tipton v. Commonwealth*, 640 S.W.2d 818 (Ky.1982). Although Dant is correct in his recitation of the law, at no time during the prosecutor's closing argument did he actually refer to April Johnson's conviction or lack thereof, and at no time did he refer to April's possible involvement as being evidence of Dant's guilt. Since the Commonwealth never referenced a co-indictee's subsequent conviction as proof of Dant's guilt, there was no violation of the rule in *Parido, supra* and *Tipton, supra* and no basis for palpable error under RCr 10.26. Therefore, we disagree with Dant's assertion that he is entitled to a new trial because the prosecutor mentioned April Johnson in his closing argument.

### CONCLUSION

Under KRE 404(b), Dant's prior acts of abusing Addryana, Katilyn and Isaac when each child cried were relevant to show his pattern of conduct and so were properly admitted at trial. In addition, the trial court did not err by admitting the victim's autopsy photographs because they were necessary to demonstrate the internal brain injuries that caused Addryana's death. Lastly, the prosecutor's reference to April Johnson during his closing argument did not result in manifest injustice and cannot constitute palpable error. Therefore, we affirm the June 15, 2006 Judgment of the Hancock Circuit Court convicting Dant of wanton murder.

All sitting. All concur.