# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 13, 2024
NOT TO BE PUBLISHED

Supreme Court of Kentucky

2023-SC-0110-MR

ANTONIO DESHON LOVE                                               APPELLANT

                      ON APPEAL FROM GRAVES CIRCUIT COURT
V.                     HONORABLE KEVIN D. BISHOP, JUDGE
                              NO. 21-CR-00165

COMMONWEALTH OF KENTUCKY                            APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Antonio Deshon Love was found guilty of being a convicted felon in possession of a handgun; first-degree possession of a controlled substance, methamphetamine while in possession of a firearm; and possession of marijuana while in possession of a firearm. He was sentenced to twenty years' imprisonment and now appeals as a matter of right. Ky. Const. § 110.

**I. FACTS AND PROCEDURAL BACKGROUND**

On March 30, 2021, the Mayfield Police Department received a tip that Love, who had an active arrest warrant for petty theft unrelated to this case, was at the home of Victoria Burge. Burge, a friend of Love's wife, was allowing Love to stay at her apartment with herself and her four young children while he and his wife were working through some relationship issues. The apartment

was a relatively small, three-bedroom public housing apartment, and Love was staying in one of the bedrooms. Burge was staying in the living room with her youngest, an infant, while her other three children stayed in the remaining two bedrooms.

Officer Holden Burnham and Sergeant Brandon Collins responded to Burge's residence to serve the arrest warrant, and Love answered the door. The officers informed him of the warrant and, although he denied stealing anything, he was cooperative. The officers asked for Love's I.D., and Love responded, "It's in my room." Love then turned from the front door of the apartment, which opened into the living room, and walked towards a small hallway to the left of the living room that led to the bedrooms and kitchen. When he realized the officers had followed him into the home he stopped and stood in the living room. The officers told him they had to accompany him because of the arrest warrant, but they offered to go back outside and run his information through one of their computers instead of making him get his I.D. Love agreed, and after the trio walked out onto the front porch Ofc. Burnham handcuffed Love and searched him incident to his arrest. The officers found a baggie of methamphetamine, a marijuana roach, and a doorknob that appeared to have been used as a pipe on Love's person.

Ofc. Burnham then placed Love in his cruiser and stayed with him while Sgt. Collins walked back to the residence to ask Burge for her consent to search. Burge gave her consent but told Sgt. Collins she did not want Love to know she was cooperating because she was afraid of him. Sgt. Collins

2

therefore went back to Ofc. Burnham's cruiser and told him, in front of Love, that Burge would not give her consent to search. The officers then drove away from the scene in separate cruisers. Ofc. Burnham took Love to be booked while Sgt. Collins circled the block and went back to the residence. Shortly thereafter two detectives arrived and searched Love's room while Sgt. Collins sat with Burge. The officers found a baggie of marijuana and a silver pistol with a black grip sitting inches away from one another on the bed in Love's room. The pictures taken by the officers during the search showed that the bed on which the pistol and marijuana were found had light blue sheets and a light blue comforter with white designs on it. Also in Love's room, the officers found Love's cellphone, a box of unused hypodermic needles, and $1,280 in cash. In a subsequent Mirandized statement to one of the detectives, Love acknowledged that he was staying in the room and acknowledged that the marijuana found in the room was his, but he denied ownership of the firearm.

In addition to the foregoing evidence, the Commonwealth introduced a video and three pictures found on Love's cellphone. The first picture was taken on March 20, 2021, ten days before Love's arrest. It depicted an aerial view looking down at a bed with light blue sheets on it. In the foreground someone was holding what appeared to be a rock of methamphetamine between their index finger and thumb. In the background on the bed there was a silver pistol with a black grip, some loose bullets, and what appeared to be two additional baggies of methamphetamine.

The second and third pictures were taken on March 25 or March 26, 2021, and depicted the same image from two different angles. The items shown in the pictures were again on a bed, this time on a comforter that appeared to be the same one on Love's bed on the day of his arrest. The photograph showed a silver pistol with a black grip next to a large amount of money in one-hundred-dollar bills and twenty-dollar bills. Behind the cash were three large mason jars with marijuana in them and each jar had one small baggie of what appeared to be methamphetamine sitting on their lids.

The video, recorded on March 17, 2021, depicted a large amount of cash in one hundred dollar and twenty-dollar bills spread out on a bed with light blue sheets on it. In the video Love is heard saying the cash was, "just from this morning." Behind the cash were three large mason jars with marijuana in them, one of which had a large baggie of a white substance sitting on its lid that Love referred to as "cream," a slang term for methamphetamine. The video then panned to the left and a silver pistol with a black grip could be seen sitting next to the mason jars, methamphetamine, and cash.

The firearm depicted in the video and photographs appeared to be the same silver pistol with a black grip found next to the marijuana during the search of his room. Additionally, Burge identified the pistol found during the search as Love's and testified that neither she nor the children ever went into Love's room. She explained that Love kept the door locked when he was at the apartment, and when he left he would take the doorknob off the door to keep them from going into the bedroom. The Commonwealth also presented

4

evidence from Holly Garcia, who identified the firearm as Love's based on a previous attempt to buy it from him. The Commonwealth played a short video from March 20, 2021, in which Garcia asked Love to buy the pistol and he responded, "I can get you a gun but not that one." The firearm was never visible in the video, but Garcia testified it was the same firearm introduced into evidence at trial.

Love's defense was that Burge had framed him. He argued that at the time of his arrest Burge had criminal charges pending against her and was under a bond condition not to have any new offenses. He also asserted that she would have lost custody of her children if she had been arrested that day. Because of this, he argued, Burge used the six-minute period when Sgt. Collins circled the block to plant the firearm, the marijuana, and the cellphone in his room.

Love was convicted of being a felon in possession of a handgun, possession of methamphetamine while in possession of a firearm, and possession of marijuana while in possession of a firearm. He now appeals.

Additional facts are discussed below as necessary.

## II. ANALYSIS

### A. There was sufficient evidence to support a firearm enhancement for the charge of possession of methamphetamine.

Love's first assignment of error concerns the sufficiency of the evidence to support a firearm enhancement for his possession of methamphetamine

charge.[1]  He acknowledges that his motion for directed verdict before the trial court was insufficient to preserve this issue for appellate review,[2] but requests review for palpable error pursuant to RCr[3] 10.26.  We have previously held that, notwithstanding a lack of preservation, a conviction based upon insufficient evidence is "an error of Constitutional magnitude" that, without question, affects a defendant's substantial rights.  *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836–37 (Ky. 2003).  Accordingly, we review Love's argument under the standard articulated in *Commonwealth v. Benham*:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth.  If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given.  For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

816 S.W.2d 186, 187 (Ky. 1991).

---

[1] Love concedes there was sufficient evidence to support the firearm enhancement for his charge of possession of marijuana.

[2] Love's counsel made a motion for directed verdict at the close of the Commonwealth's case and at the close of all the evidence but did not specifically assert that the Commonwealth failed to prove a firearm enhancement was warranted for his possession of methamphetamine charge, nor did he identify the elements of the enhancement that the Commonwealth allegedly failed to prove.  *See Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020).

[3] Kentucky Rule of Criminal Procedure.

The firearm enhancement statute, KRS[4] 218A.992, provides in relevant part:

> (1) Other provisions of law notwithstanding, any person who is convicted of any violation of this chapter who, at the time of the commission of the offense and in furtherance of the offense, was in possession of a firearm, shall:
>
> > (a) Be penalized one (1) class more severely than provided in the penalty provision pertaining to that offense if it is a felony; or
> >
> > (b) Be penalized as a Class D felon if the offense would otherwise be a misdemeanor.

In *Commonwealth v. Montaque*, 23 S.W.3d 629 (Ky. 2000) this Court's predecessor established a test to determine whether the requirements of the firearm enhancement statute have been satisfied:

> First, whenever it is established that a defendant was in actual possession of a firearm when arrested, or that a defendant had constructive possession of a firearm within his or her "immediate control when arrested," . . . the Commonwealth should not have to prove any connection between the offense and the possession for the sentence enhancement to be applicable. . . Next, when it cannot be established that the defendant was in actual possession of a firearm or that a firearm was within his or her immediate control upon arrest, the Commonwealth must prove more than mere possession. It must prove some connection between the firearm possession and the crime.

*Id.* at 632-633. Stated differently, the firearm statute can be satisfied in one of three ways: (1) the defendant had actual possession of the firearm while committing an offense in violation of KRS Chapter 218A[5]; (2) the defendant had

---

[4] Kentucky Revised Statute.

[5] Except for violations of KRS 218A.210, 218A.1450, 218A.1451, or 218A.1452, which are excluded. KRS 218A.992(2).

constructive possession of the firearm and the firearm was within his or her immediate control[6] during the commission of a KRS Chapter 218A offense; or (3) the defendant had constructive possession of the firearm while committing the KRS Chapter 218A offense and the Commonwealth proved a nexus between the possession of the firearm and the offense. It was subsequently clarified in *Johnson v. Commonwealth,* 105 S.W.3d 430 (Ky. 2003) that a firearm either being in a defendant's actual possession or a firearm being constructively possessed and within his or her immediate control when arrested or seized[7] did not obviate the need for a jury to find a nexus between possession of the firearm and the offense but, rather, those findings themselves satisfy the nexus requirement.[8]  *Id.* at 437 n.1.

The Commonwealth does not argue, nor did the evidence support, that Love had actual possession of the firearm when he was arrested. And, while Love concedes that he had constructive possession of the firearm, he argues that the Commonwealth failed to prove that the firearm was within his

---

[6] Our case law utilizes the definition of "immediate control" established by the United States Supreme Court in *Chimel v. California*, that is, "the area from within which he might gain possession of a weapon or destructible evidence."  395 U.S. 752, 763 (1969).  *See Montaque*, 23 S.W.3d at 633 n.1; *Johnson v. Commonwealth*, 105 S.W.3d 430, 437 (Ky. 2003); *Riley v. Commonwealth*, 120 S.W.3d 622, 629 (Ky. 2003).

[7] *See Johnson*, 105 S.W.3d at 437 (determining the area of "immediate control" based on the room in which the arrestee was initially seized by police rather than the area in which he was later arrested).

[8] We also clarified in *Johnson*, that if that a defendant is arrested sometime after committing the offense, the standard would be whether they possessed a firearm "while committing the. . .offense" rather than "when arrested."  *Id.*  But, as in *Johnson*, those are not the circumstances present in this case.

immediate control and that it otherwise failed to prove a nexus between his possession of the firearm and his possession of methamphetamine.[9]

We need not address whether the firearm was within Love's immediate control, as we hold that the Commonwealth's evidence demonstrated "some connection between the firearm possession and the [possession of methamphetamine]." *Montaque*, 23 S.W.3d at 633. As previously discussed, the Commonwealth introduced three photographs and a video extracted from Love's cellphone, which was found in his room. The video, recorded less than two weeks before his arrest, showed Love's firearm lying next to three jars of marijuana and a large baggie of methamphetamine on his bed. Ten days before his arrest, Love took a photograph of what appeared to be a rock of methamphetamine and two additional baggies of methamphetamine with his firearm clearly visible lying on his bed in the background. Finally, either four or five days prior to his arrest, he took two photographs of his firearm and three large mason jars of marijuana, each with a small baggie of what appeared to be meth on their lids, sitting on his bed.

The Commonwealth argued in closing that the photographic and video evidence demonstrated a clear nexus between his possession of the firearm and his possession of methamphetamine and possession of marijuana. Specifically, it argued that he consistently kept these items together and that, to Love, they went hand in hand. We agree. On the day he was arrested, his firearm was

_____

[9] Possession of methamphetamine is a violation of KRS 218A.1415(c).

9

found sitting on his bed inches away from a baggie of marijuana. And, while there was no methamphetamine found on the bed with the firearm and the marijuana, a baggie of methamphetamine was found on his person. The photographs and video were taken and recorded in the days leading up to Love's arrest and demonstrated his habit of keeping his firearm in close proximity to his methamphetamine.

Accordingly, the firearm enhancement applied here is not of the kind that the *Montaque* Court warned against in which KRS 218A.992 is used to punish non-criminal activity based on the presence of a firearm that was wholly unrelated to the offense of arrest. *Id.* at 632. In *Montaque,* the Court quoted the commentary from Kentucky's firearm enhancement statue's federal counterpart. *Id.* That commentary provides that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." *Id.* (quoting U.S.S.G.[10] § 2D1.1). Here, the Commonwealth's evidence demonstrated that Love's possession of the firearm was related to his possession of the methamphetamine and that the firearm was not merely present in the home and unrelated to the offense, as in the hunting rifle example above.

---

[10] United States Sentencing Guidelines.

10

Based on the foregoing, we cannot hold that it would be "clearly unreasonable"[11] for the jury to find "some connection"[12] between his constructive possession of the firearm and his possession of methamphetamine at the time of his arrest.

**B. The trial court did not err by admitting the Garcia video.**

Next, Love contends that the trial court reversibly erred by admitting the March 20, 2021, video of Garcia's attempt to purchase his firearm.  He argues that the Commonwealth failed to provide adequate notice pursuant to KRE[13] 404(c) of its intention to introduce the video at trial, and further alleges that the evidence was inadmissible under KRE 404(b).

Love's counsel challenged the admission of the Garcia video prior to opening statements.  The defense's motion did not allege a lack of proper notice under KRE 404(c) but instead asserted only that the video was highly prejudicial and lacked probative value.  The Commonwealth explained that the video was a forty second clip during which Garcia attempted to buy the firearm at issue in the case from Love.  It further explained that its purpose in playing the video was to allow Garcia to identify the firearm to be introduced at trial as the same firearm she attempted to buy from Love in the video, which tended to prove his ownership of it.  After confirming the Commonwealth did not intend "to go beyond that" the trial court overruled defense counsel's objection and

---

[11] *Benham*, 816 S.W.2d at 187.

[12] *Montaque*, 23 S.W.3d at 33.

[13] Kentucky Rule of Evidence.

found that the evidence was relevant and probative. After the trial court's ruling, defense counsel did not request a clarification or ruling regarding the video's potential prejudice. We further note that immediately after the ruling, defense counsel acknowledged that she had previously seen the video.

With that established, we start with Love's challenge under KRE 404(c). In a criminal prosecution, if the Commonwealth intends to produce evidence pursuant to KRE 404(b), i.e., evidence of "other crimes, wrongs, or acts," it must give "reasonable pretrial notice to the defendant of its intention to offer such evidence." KRS 404(c). If the Commonwealth fails to give such notice, the court may exclude the evidence; may excuse the failure to provide such notice, if good cause is shown, and grant a continuance; or may provide any other remedy necessary to avoid unfair prejudice caused by the lack of notice. *Id.* It is now well-established that "[t]he intent of [KRE 404(c)] is to provide the accused with an opportunity to challenge the admissibility of [the] evidence through a motion in limine and to deal with reliability and prejudice problems at trial." *Bowling v. Commonwealth*, 942 S.W.2d 293, 300 (Ky. 1997), *overruled on other grounds by McQueen v. Commonwealth*, 339 S.W.3d 441 (Ky. 2011) (quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.25 (3rd Ed.1993)).

Consequently, this Court has held numerous times that if a defendant does in fact challenge the offending evidence via a motion in limine, the defendant has suffered no prejudice and KRE 404(c) is satisfied. *See, e.g., Bowling*, 942 S.W.2d at 300; *Dant v. Commonwealth*, 258 S.W.3d 12, 22 (Ky.

12

2008); *Soto v. Commonwealth*, 139 S.W.3d 827, 859 (Ky. 2004); *Tamme v. Commonwealth*, 973 S.W.2d 13, 31 (Ky. 1998). Clearly, KRE 404(c) was satisfied in this case and Love suffered no prejudice because he moved to exclude the Garcia video prior to trial.

This brings us to the evidence's admissibility under KRE 404(b). *Bell v. Commonwealth*, 875 S.W.2d 882 (Ky. 1994) established a three-part test to determine the admissibility of KRE 404(b) evidence. Specifically, the evidence must be relevant, it must be probative, and its probative value must not be substantially outweighed by its potential to unduly prejudice the defendant. *Id.* at 890. In this case, Love argues that the trial court erred by failing to explicitly address the prejudice prong of the *Bell* test prior to ruling on the evidence's admissibility, but he has cited no case law to suggest that the trial court's failure to do so constituted reversible error. We will accordingly proceed to address the Garcia video's admissibility under the *Bell* test and will reverse the trial court's ruling only if we determine it was an abuse of discretion. *Id.*

The first prong of the *Bell* test, relevance, considers whether the KRE 404(b) evidence is "relevant for some other purpose than to prove the criminal disposition of the accused[.]" *Id.* at 889. The Garcia video does not run afoul of this prong, as it was relevant to prove Love's ownership of the firearm. At trial, Love's defense was that Burge had framed him by planting the firearm and other items in his room, and that the firearm did not belong to him. He had also denied ownership of the firearm during a Mirandized statement to law enforcement following his arrest. Garcia testified that the firearm introduced

13

into evidence at trial was Love's and that she attempted to buy it from Love while in his room at Burge's apartment on March 30, 2021, and he refused. We note that Garcia's attempt to buy the firearm occurred on the same day that Love took one of the photographs with his cellphone depicting the firearm on his bed. Although the firearm is never seen in the video, it provided some additional credence to Garcia's identification of the firearm at trial. In the video she can be heard asking Love to buy the firearm and he responded, "I can get you a gun but not that one." As ownership of the gun was a key component of the trial, the relevance prong of the *Bell* test weighs in favor of the Garcia video's admission.

The second prong, probativeness, addresses whether the KRE 404(b) evidence is "sufficiently probative of its commission by the accused to warrant its introduction into evidence[.]" *Id.* In other words, it asks, "could the jury 'reasonably infer that the prior bad acts occurred and that [the defendant] committed such acts[?]'" *Jenkins v. Commonwealth*, 496 S.W.3d 435, 457 (Ky. 2016) ((citing *Parker v. Commonwealth*, 952 S.W.2d 209, 214 (Ky.1997) (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)). Love's face cannot be seen in the video, but Garcia testified that the male voice heard in the video was Love's. Additionally, the male voice in the Garcia video is similar to the voice heard on the video extracted from Love's cellphone. Accordingly, the probative prong of the *Bell* test also cuts in favor of admission.

The final prong, prejudice, requires that the other bad act evidence's potential to unduly prejudice the defendant is substantially outweighed by its

14

probative value. *Bell*, 875 S.W.2d at 890. Love argues that the Garcia video is highly prejudicial because in the first few frames of the video the camera was pointed at a table, and on that table were digital scales, some loose cash, a marijuana grinder, and two mason jars that appear to be empty. But the camera's focus on the table was fleeting and lasted only three to four seconds. Moreover, by the time the Garcia video was played at trial the jury had already seen the pictures extracted from Love's cellphone that showed him to be in possession of methamphetamine, marijuana, and a firearm. The potential for the Garcia video to further prejudice Love was therefore marginal, and, given that the Garcia video bore on a key issue in the case, i.e., ownership of the gun, we cannot hold that the video's probative value was substantially outweighed by its potential to unduly prejudice the jury against Love.

Based on the foregoing, we hold that the trial court's ruling to admit the Garcia video was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999) (defining "abuse of discretion").

## C. Love waived any objection to the video and photographs extracted from his cellphone.

Love's final argument is that the trial court erred by admitting a video and six photographs that were extracted from his cellphone. He acknowledges this issue was not properly preserved for appellate review, but requests review for palpable error. The Commonwealth argues in response that Love waived any argument against the evidence, and we agree.

15

The Commonwealth's collective exhibit 11 was comprised of three photographs: the photograph taken on March 20, 2021, depicting someone holding what appeared to be a rock of methamphetamine, a pistol, loose bullets, and two baggies of what appeared to be meth, and the two photographs taken on March 25 or March 26, 2021, that each showed three jars of marijuana with what appeared to be baggies of methamphetamine on their lids, a large amount of loose cash, and a pistol. When the Commonwealth moved to admit its collective exhibit 11 into evidence, the trial court asked defense counsel if she had any objection to the evidence to which she replied, "No objection." Similarly, when the Commonwealth moved to introduce the video from March 17, 2021, that depicted cash, a pistol, three mason jars with marijuana in them, and a large baggie of methamphetamine, the trial court asked defense counsel if she had any objection to the evidence and she replied, "No objection." Finally, the Commonwealth moved to introduce three still photographs captured from the March 17 video. The trial court asked defense counsel, "Any objection?" to which counsel replied, "No sir."

In *Tackett v. Commonwealth*, this Court held that when "a party not only forfeits an error by failing to object to the admission of evidence, but specifically waives any objection, the party cannot complain on appeal that the court erroneously admitted that evidence." 445 S.W.3d 20, 29 (Ky. 2014). In that case, the Commonwealth moved to introduce a physician's report wherein a child victim had identified the defendant as the perpetrator of his sexual abuse. *Id.* at 27. Prior to admitting the report, the trial court asked defense

16

counsel if he had any objection to the admission of the report, and counsel responded he did not, nor did he object to the physician's testimony regarding the report. *Id.* The *Tackett* Court held that this was an explicit waiver of any objection to the admission of the report and that the issue was therefore not subject to review. *Id.* at 29.

In this case, defense counsel explicitly stated she had no objection to the admission of the video and six photographs extracted from Love's phone. Defense counsel was aware of what the photographs and the video contained, as the Commonwealth showed each of the photographs from its collective Exhibit 11 and played the video during its opening statement, which likewise received no objection from defense counsel. In accordance with *Tackett*, defense counsel's statements that she had no objection to any of the evidence at issue constituted an explicit waiver of any objection to the admission of that evidence, and the alleged error is not subject to review.

### III. CONCLUSION

Based on the foregoing, we affirm.

All sitting. All concur.

17

COUNSEL FOR APPELLANT:

Sarah Dickerson Dailey
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

James Grant Burdette
Assistant Attorney General