# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: SEPTEMBER 18, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0354-MR

DAVID CISCO                                                              APPELLANT

V.

ON APPEAL FROM ROWAN CIRCUIT COURT
HONORABLE ELIZABETH H. DAVIS, JUDGE
NO. 22-CR-00152

COMMONWEALTH OF KENTUCKY                                     APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Rowan County jury convicted David Cisco of failing to comply with sex-offender registration, first offense, and of being a first-degree persistent felony offender (PFO I). He received a total sentence of 20 years' imprisonment and appeals to this Court as a matter of right. Having carefully reviewed the record, law, and briefs, we affirm.

On March 9, 2004, Cisco entered a plea of nolo contendere to the felony offense of fourth-degree criminal sexual conduct in Michigan. He was sentenced to six months' imprisonment and two years' probation. Additionally, the judgment contained a recommendation that Cisco "Attend & Complete Sex Offenders Course/Counseling."

In 2011, Cisco moved to Kentucky and reported to the Department of Probation and Parole ("Probation and Parole"). Because the Kentucky Penal

Code does not contain an equivalent to Cisco's Michigan offense, Probation and Parole conducted a comparative analysis and determined that Cisco qualified as a lifetime sex offender registrant under Kentucky law. Cisco did not appeal this determination.

In 2019, Cisco signed a Kentucky sex offender registrant responsibilities form. The form stated that Cisco qualified as a lifetime registrant and required him to verify his registered address every three months. In January 2022, Probation and Parole Officer Matthew Hall assisted Cisco with the completion of another sex offender responsibilities form.

A few months later, Kentucky State Police received a report that Cisco was not living at his registered address in Rowan County. On May 24, 2022, Kentucky State Troopers Matt Smith and Michael Armstrong searched for Cisco at his listed residence. The owner of the property, Donald Messer, informed the Troopers that Cisco had not resided at that location for approximately three weeks.

On June 12, 2022, police arrested Cisco at the residence of his then-girlfriend[1], Roxanna, in Fleming County. Beginning in early 2022, Cisco would stay at Roxanna's residence for two or three nights at a time. He began to permanently reside with her in May 2022 when she became ill.[2] Roxanna claimed Cisco had been dividing his time between her residence and his

---

[1] Cisco later married Roxanna.

[2] The nature and cause of Roxanna's illness was disputed at trial.

registered address in Rowan County.  However, Cisco did not update his registered address with Probation and Parole at any time prior to his arrest.

Cisco was indicted on charges of failing to comply with sex-offender registration, second or subsequent offense, and PFO I.  The charges were tried before a jury in Rowan Circuit Court.  At the close of evidence, the trial court determined the Commonwealth could not use both the subsequent offense and the PFO I charge to enhance the penalty for the underlying charge.  The Commonwealth elected to proceed on the PFO I.  Ultimately, the jury convicted Cisco for failing to comply with sex-offender registration, first offense, and PFO I.  The trial court sentenced Cisco to a total of twenty years' imprisonment in accordance with the jury's recommendation.  This appeal followed.

Cisco first argues the trial court erred by failing to grant a mistrial, *sua sponte*, after the Commonwealth mentioned his prior conviction for failing to comply with the sex-offender registry during voir dire.  He did not request either an admonition or a mistrial and requests this Court to review for palpable error.

RCr[3] 10.26 authorizes an appellate court to review an unpreserved error as follows:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

---

[3] Kentucky Rules of Criminal Procedure.

A palpable error is "easily perceptible, plain, obvious, and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). To demonstrate manifest injustice, a party must show the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). In other words, a palpable error occurs where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4.

At the commencement of voir dire, the trial court announced to the panel that "Mr. Cisco has been charged with failure to comply with sex offender registration." During the Commonwealth's questioning of the venire, the prosecuting attorney posed two hypotheticals involving subsequent offenses and increased punishment. The first hypothetical involved the failure to update the address on a driver's license and "whether there's a certain number of times you should be able to do that and get a free pass." The Commonwealth proceeded to ask whether the "penalty should increase" for multiple offenses.

The second hypothetical involved a situation where the prosecuting attorney gave her son a warning for playing on the iPad after bedtime. The prosecuting attorney then asked whether she "should have increased his punishment" after catching the child with the iPad on subsequent occasions.

After discussing these two hypotheticals, the Commonwealth stated, "the case that you're going to hear about today is failure to register as a sex offender, second or more offense." Cisco objected and the trial court instructed

4

the Commonwealth to "tread carefully" and that neither party should mention the prior offense until it could research the issue further. Cisco did not request any additional relief. Upon resuming the questioning of the venire, the Commonwealth stated, "[a]lright, so what we are here today for, is the failure to register as a sex offender." No further mention of Cisco's prior offense occurred during the guilt phase of trial.

"A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky. 2005), *overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010). A manifest necessity may arise upon the occurrence of an error "of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way [except by grant of a mistrial]." *Id.* (quoting *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996)).

Certainly, KRE[4] 404(b) "generally preclude[s] mention of a defendant's uncharged bad acts with no relevance beyond their tendency to cast a bad light on the defendant's character[.]" *Jacobsen v. Commonwealth*, 376 S.W.3d 600, 609 (Ky. 2012). However, "it is no less true that breaches of those rules are generally subject to admonitory cures and so, generally, do not provide grounds for a mistrial." *Id.* at 610 (citing *Bray*, 177 S.W.3d at 752 and

---

[4] Kentucky Rules of Evidence.

*Johnson v. Commonwealth*, 105 S.W.3d 430 (Ky. 2003)). Such an admonition is presumed to effectively cure an improper reference to a prior offense except:

> (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant . . . or (2) when the question was asked without a factual basis *and* was "inflammatory" or "highly prejudicial."

*Id.* (quoting *Johnson*, 105 S.W.3d at 441); *see also Lampkins v. Commonwealth*, 701 S.W.3d 99, 119-20 (Ky. 2024).

On similar facts, we recently held an admonition was sufficient to cure an improper reference to prior offenses during voir dire. *Lewis v. Commonwealth*, 642 S.W.3d 640, 645 (Ky. 2022). In *Lewis*, the trial court read the entirety of an indictment to the venire, including references to prior offenses. *Id.* at 642. The defendant objected and requested a mistrial. *Id.* The trial court refused to grant a mistrial and instead admonished the jury to disregard the information. *Id.* On direct appeal, we concluded "that the brief mention of [the defendant's] previous conviction and the admonition that followed did not seriously prejudice [the defendant's] case such that a mistrial was required." *Id.* at 644.

Cisco attempts to distinguish the present appeal from *Lewis* because the improper reference to his prior offense was preceded by the Commonwealth's two hypotheticals on the propriety of increased punishment for subsequent offenses. However, we cannot conclude the addition of the two hypotheticals mandates a different outcome here.

6

Had Cisco requested an admonition, we are convinced, under *Lewis*, that it would have been sufficient to cure the Commonwealth's direct reference to his prior offense. Since an admonition would have effectively cured the improper direct reference, we fail to perceive any reason why it could not also have cured the indirect oblique references.

Moreover, we cannot discern any "overwhelming probability" that the jury would have been unable to follow an admonition or that the improper references were "devastating" to the defense. *Jacobsen*, 376 S.W.3d at 610. Similarly, although the prosecutor's references to Cisco's prior offense were inadmissible, we cannot conclude they lacked a "factual basis" or were otherwise inflammatory. *Id.* Further, because an admonition would have been sufficient to cure the improper references, we further conclude there was no manifest necessity for a mistrial here. *Graves v. Commonwealth*, 17 S.W.3d 858, 865 (Ky. 2000). The trial court was not required, *sua sponte*, to admonish the jury or grant a mistrial.

Second, Cisco argues the trial court erred by denying his motion for directed verdict on the charge of failing to register as a sex offender. Specifically, he contends the Commonwealth failed to produce sufficient evidence that: (1) he was a "registrant" within the meaning of KRS[5] 17.510; and (2) he knowingly failed to notify Probation and Parole of his change of residence. We disagree.

---

[5] Kentucky Revised Statutes.

A trial court's denial of motion for directed verdict should not be reversed unless the appellate court determines "it would be clearly unreasonable for a jury to find guilt[.]" *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). When confronted with a motion for directed verdict, the trial court must assume the truth of the Commonwealth's evidence and "draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Id.* A conviction must be based on "evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id.* at 187-88. Ultimately, the directed verdict standard depends on "the statutes creating the offense[,]" and "is not controlled by the law as described in the jury instructions[.]" *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013), *overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020).

KRS 17.510(12) provides, "[a]ny person required to register under this section who knowingly violates any of the provisions of this section or prior law is guilty of a Class D felony for the first offense and a Class C felony for each subsequent offense." Additionally, KRS 17.510(11) states in pertinent part:

> (11) (a) If the residence address of any registrant changes, but the registrant remains in the same county, the person shall register, on or before the date of the change of address, with the appropriate local probation and parole office in the county in which he or she resides.
>
> (b) 1. If the registrant changes his or her residence to a new county, the person shall notify his or her current local probation and parole office of the new residence address on or before the date of the change of address.

8

2. The registrant shall also register with the appropriate local probation and parole office in the county of his or her new residence no later than five (5) working days after the date of the change of address.

The term "registrant" is defined in KRS 17.500(5) to mean:

(a) Any person eighteen (18) years of age or older at the time of the offense or any youthful offender, as defined in KRS 600.020, who has committed:

1. A sex crime; or

2. A criminal offense against a victim who is a minor; or

(b) Any person required to register under KRS 17.510; or

(c) Any sexually violent predator; or

(d) Any person whose sexual offense has been diverted pursuant to KRS 533.250, until the diversionary period is successfully completed[.]

KRS 17.510(7)(a) further provides in pertinent part:

[I]f the person has been convicted of an offense . . . **under the laws of another state or territory that would require registration if committed in this Commonwealth**, that person upon changing residence from the other state or territory of the United States to the Commonwealth or upon entering the Commonwealth for employment, to carry on a vocation, or as a student shall comply with the registration requirement of this section, including the requirements of subsection (4) of this section, and shall register within five (5) working days with the appropriate local probation and parole office in the county of residence, employment, vocation, or schooling.

(Emphasis added).

At the outset, we note Cisco's argument for entitlement to a directed verdict has failed to account for the language highlighted above in KRS 17.510(7)(a).  Instead, he has primarily focused on other provisions of KRS

9

17.510(7)(a) and 17.500(5). We need not address these superfluous claims, however, and confine our analysis to the sufficiency of the evidence relative to whether Cisco's Michigan conviction would have required him to register as a sex offender in Kentucky had the offense been committed here.

The present record reflects the following facts pertinent to Cisco's status as a sex-offender "registrant." Cisco was convicted of a felony sexual offense in Michigan in 2004. When he moved to Kentucky, Cisco reported to Probation and Parole who performed a comparative analysis between his Michigan conviction and Kentucky registration offenses. Based on the results of the comparative analysis, Probation and Parole determined Cisco qualified as a lifetime registrant under Kentucky law. Moreover, Cisco acknowledged his status as a lifetime registrant when he signed his sex offender registrant responsibilities form and did not appeal his status at any time. Additionally, Cisco admitted to Messer that he was a registered sex offender. Further, Roxanna testified she "knew and had heard" Cisco was a registered sex offender and that he had discussed his reporting obligations with her.

Based on our review of the record, we are convinced the Commonwealth produced sufficient evidence that Cisco was "convicted of an offense . . . under the laws of another state . . . that would require registration if committed in this Commonwealth[.]" KRS 17.510(7)(a). Thus, he also qualified as a "person required to register under KRS 17.510" pursuant to KRS 17.500(5)(b). Moreover, we cannot credit Cisco's assertion that the comparative analysis evidence was insufficiently developed and corroborated because these concerns

10

implicate the weight, rather than the sufficiency, of the evidence. *See Benham*, 816 S.W.2d at 187. It is further well-established that circumstantial evidence may support a conviction if, "based on the whole case, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt." *Graves*, 17 S.W.3d at 862.

Additionally, Cisco argues the Commonwealth failed to produce sufficient evidence that he knowingly failed to comply with the registration requirements. We disagree.

KRS 501.020(2) defines the *knowing* mental state as follows, "[a] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists." "Thus, nothing short of actual knowledge will suffice to sustain a conviction." *Love v. Commonwealth*, 55 S.W.3d 816, 825 (Ky. 2001). However, the requirement of actual knowledge does not require the production of direct evidence because "proof of circumstances that would cause a reasonable person to believe or know of the existence of a fact is evidence upon which a jury might base a finding of full knowledge of the existence of that fact." *Id.* (quoting Robert W. Lawson and William H. Fortune, *Kentucky Criminal Law*, § 2–2(c)(1), at 45 (LEXIS 1998)). "In other words, though actual knowledge is required, proof of actual knowledge can be by circumstantial evidence." *Id.*

Here, the Commonwealth produced adequate evidence of Cisco's knowing mental state. In May 2022, Messer informed Troopers Smith and Armstrong

11

that Cisco had not been present at his registered address for three weeks. Additionally, Cisco did not update his address with Probation and Parole or otherwise seek to register Roxanne's address as a secondary residence at any time prior to his arrest in June 2022.

Moreover, Cisco's claim that he was unaware of the applicable legal requirements is belied by the registrant responsibilities form, which Cisco signed in January 2022, and states in pertinent part:

> If my residence address changes within in [sic] the same county, I must register the change of address with the local probation and parole office for the county where I live on or before the date of the change of address.

> If I change my address to a new county, I must notify my current local probation and parole office of the new residence address on or before the date of the change of address. I must also register with the appropriate local probation and parole office for my new county of residence no later than five (5) working days after the date of my change of address.

Additionally, the form provides, "I am familiar with the provisions of KRS 17.500-540, KRS 17.545, and KRS 17.546, and understand that the provisions of these statutes may be located at <http[:]/www.lrc.ky.gov>."

From these facts, we are convinced a reasonable jury could infer Cisco knowingly failed to comply with the sex-offender registration. Although Cisco contends certain favorable evidence and inferences support a contrary finding, mere conflicting evidence does not entitle a defendant to a directed verdict. *Jackson v. Commonwealth,* 247 S.W.2d 52, 53 (Ky. 1952). It is well-established that the Commonwealth is not required to "rule out every hypothesis except guilt beyond a reasonable doubt." *Rogers v. Commonwealth,* 315 S.W.3d 303,

311 (Ky. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). In other words, "the question on a directed verdict motion is not necessarily what evidence supporting the defendant was solicited, but rather what evidence the Commonwealth produced in support of its burden of proof." *Sutton v. Commonwealth*, 627 S.W.3d 836, 848 (Ky. 2021).

For his final contention of error, Cisco argues the Commonwealth committed two instances of prosecutorial misconduct during closing argument. He concedes this argument is unpreserved and again requests palpable error review.

When a defendant fails to make a contemporaneous objection to alleged prosecutorial misconduct, we will only reverse if flagrant misconduct rendered the entire trial fundamentally unfair. *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016). To determine whether improper comments amount to flagrant prosecutorial misconduct, we must examine: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.* (quoting *Mayo v. Commonwealth*, 322 S.W.3d 41, 56 (Ky. 2010)). "Of course, this four-part test applies only if a court has determined that a prosecutor's comments were improper." *Mayo*, 322 S.W.3d at 56.

Relative to the first instance of alleged misconduct, Cisco argues the Commonwealth made inflammatory remarks involving danger to children.

13

Additionally, he contends these remarks were not based upon the evidence. We disagree.

During his closing argument, Cisco contended the charge of failing to comply with the sex-offender registration "was much ado about nothing." Additionally, he insinuated the charged offense was a victimless crime and twice asked the jury, "where is the victim?" Cisco further posited that he was "the only victim" in this matter.

The Commonwealth directly responded to Cisco's contentions during its closing argument and stated:

> You have heard [defense counsel] make a lot of statements about Mr. Cisco being a victim. Well, I personally don't consider Mr. Cisco a victim. I consider the victim to be the individual that he sexually assaulted in 2003. And to sit here and say to you all that there is no victim when somebody fails to register as a sex offender, it's just really appalling to me. Because you heard Officer Hall testify to exactly why we require these individuals who have previously been convicted of a sex crime to register their addresses. And that's not just so everybody can know where they're at, but that's so that the mom that's living next door with her two kids knows that the guy looking out the window may be a sex offender. That's so when so-and-so starts dating someone and they have children of their own, they can look and see if that individual is a sex offender, so they don't have access to their children. So, this is not a situation where it's extra punishment just to punish Mr. Cisco. It is a situation where Mr. Cisco took actions in 2003, and those actions continue to have requirements of him. And then, in 2022, Mr. Cisco failed to meet the requirements of his prior actions.

We conclude the prosecutor's comments were within the bounds of fair and reasonable argument. This Court has repeatedly held both sides "are accorded wide latitude during closing argument to comment on the evidence, on the opposing side's tactics, and on the falsity of the opposing side's

14

position." *Hale v. Commonwealth,* 396 S.W.3d 841, 851 (Ky. 2013) (citing *Stopher v. Commonwealth,* 57 S.W.3d 787, 805-06 (Ky. 2001)). Thus, the Commonwealth was free to rebut Cisco's portrayal of himself as the victim and other attempts to minimize the gravity of the charged offense. Moreover, contrary to Cisco's argument, the Commonwealth did not allege his prior Michigan conviction involved a child victim. Instead, the Commonwealth merely explained that one of the purposes of the sex-offender registry is protect children in general. This statement was based on the testimony of Officer Hall. The Commonwealth's argument was proper.

Regarding the second allegation of prosecutorial misconduct, Cisco argues the Commonwealth improperly invited the jury to speculate on matters not in evidence. Specifically, the Commonwealth made the following argument relative to Cisco's potential motive for failing to comply with the registry:

> He was instructed in those documents that he is required to give his address. His wife said that he knew he was required to give his address. Maybe part of that reason was because she has children. Maybe he didn't want to give that address of his girlfriend because she has kids. And that would have alerted Probation and Parole Officer Hall to testify that if he had known that she had children, he would have called social services in order to take steps to protect those children.

Again, we conclude the Commonwealth remained within the bounds of proper argument. Roxanna testified that she had four children and that Cisco had access to two of them when she exercised her visitation rights. She further stated that Cisco had discussed the requirements of his sex-offender registration with her. Because the Commonwealth's argument rested on a factual basis, we perceive the prosecutor's comments to constitute an invitation

15

to draw a reasonable inference, rather than an invitation to speculate on matters not in evidence. During "closing remarks, a prosecutor may draw all reasonable inferences from the evidence and propound his explanation of the evidence and why it supports a finding of guilt." *Tamme v. Commonwealth,* 973 S.W.2d 13, 39 (Ky. 1998) (citing *Bills v. Commonwealth,* 851 S.W.2d 466, 473 (Ky. 1993)). Thus, we fail to perceive any improper commentary in this regard.

Accordingly, the judgment of the Rowan Circuit Court is hereby affirmed.

All sitting. Lambert, C.J.; Bisig, Goodwine, Keller, and Nickell, JJ., concur. Conley and Thompson, JJ., concur in result only.


COUNSEL FOR APPELLANT:

Kathleen K. Schmidt
Jennifer E. Hubbard
Assistant Public Advocates

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Ryan D. Mosley
Assistant Solicitor General